# EXHIBIT F

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
(212) 880-9410

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
KEFIRA WILDERMAN

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

November 20, 2025

**BY EMAIL**

Peter J. Davis, Esq.
Thomas Burnett, Esq.
Assistant United States Attorneys
Southern District of New York
United States Department of Justice
26 Federal Plaza
New York, NY 10278

Lindsey Keenan, Esq.
Special Assistant United States Attorney

**Re: *United States v. Leech*, No. 24 Cr. 658 (GHW) (S.D.N.Y.)**

Dear Messrs. Burnett and Davis and Ms. Keenan:

Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C) and the Court's order dated June 4, 2025 (Dkt No. 30), the defense supplements its expert disclosure for Dr. Kevin Maloney. In response to the government's disclosures of expert testimony on October 23, 2025, Dr. Maloney may provide additional testimony rebutting testimony of the government's experts.

The basis of Dr. Maloney's opinions are his qualifications described in his October 23, 2025 disclosure, the materials described in that disclosure, his review of portions of the expert disclosures provided by the government's experts Professors Petter Kolm and Lauren Cohen dated October 23, 2025, additional materials being produced today, and the further analysis described below. Accompanying this disclosure are data files produced in the following file paths: Maloney > Trade Reassignment; and Maloney > Regression Analysis.

Set forth below is a summary of Dr. Maloney's anticipated testimony.

## I. SUMMARY OF ANTICIPATED TESTIMONY

In response to Professor Kolm's and Professor Cohen's single-day trade reassignment analysis (the "Kolm/Cohen Trade Reassignment")[1] and opinions:

- Dr. Maloney will testify that he reviewed:
    - the design of the Kolm/Cohen Trade Reassignment and Mr. Dolgoff's single-day trade reassignment;
    - tables and analysis Mr. Dolgoff prepared summarizing the output of the Kolm/Cohen Trade Reassignment and Mr. Dolgoff's single-day trade reassignment;
    - tables and analysis Mr. Dolgoff prepared summarizing the output of Mr. Dolgoff's cumulative effect of trade reassignment within calendar weeks; and
    - Professors Kolm and Cohen's correlation and other analyses of the Kolm/Cohen Trade Reassignment.[2]
- Dr. Maloney will testify that he evaluated the following conclusions that Professors Kolm and Cohen draw from the Kolm/Cohen Trade Reassignment:
    - Professor Kolm's conclusion that the duration results of the reallocated trades being "highly correlated" with the actual duration of the portfolios is "evidence that duration limits did not significantly constrain Mr. Leech's flexibility in allocating Treasury F&Os;"[3]
    - Professor Kolm's conclusion that this same correlation analysis shows "that the duration of Macro Opps would not have changed significantly if Mr. Leech had allocated trades 50/50 or flipped his allocations, suggesting that [Mr. Leech's] allocations to Macro Opps were not necessary to manage duration;"[4] and
    - Professor Cohen's conclusion that his correlation analysis of the Kolm/Cohen Trade Reassignment and his count of the number of days outside limits with and without the trade reassignment:
        - are evidence that "duration limits on Macro Opps and the Core Strategies" "did not" "meaningfully constrain[]" Mr. Leech's allocations; and

---

[1] Professor Kolm and Professor Cohen share the same underlying trade reassignment analysis.

[2] In particular, Dr. Maloney reviewed the analyses discussed at Professor Kolm's October 23, 2025 Disclosure ("Kolm Disclosure") ¶ 35.d, f and Professor Cohen's October 23, 2025 Disclosure ("Cohen Disclosure") ¶¶ 64, 64.c and 71.c.

[3] Kolm Disclosure ¶ 35.d.

[4] Kolm Disclosure ¶ 35.f.

    - show that "it was unlikely that Mr. Leech's allocations to Macro Opps were driven by a need to manage negative convexity."[5]

- Dr. Maloney will testify that, based on this review and his education, research, training, and professional experience, these conclusions are unsupported by the Kolm/Cohen Trade Reassignment evidence provided by Professors Kolm and Cohen.[6]
- Dr. Maloney will testify that contrary to the conclusions of Professors Kolm and Cohen, the Kolm/Cohen Trade Reassignment and Mr. Dolgoff's single-day and cumulative trade reassignment provide evidence that the allocations to Macro Opps were "necessary to manage duration," that the duration limits did "meaningfully constrain" Mr. Leech's allocations during the period January 1, 2021 to October 20, 2023 (the "Relevant Period"), and that it was "[]likely that Mr. Leech's allocations to Macro Opps were driven by a need to manage negative convexity."
- Dr. Maloney will also testify that the impact of the Kolm/Cohen Reassignment and Mr. Dolgoff's single-day and cumulative trade reassignment on the daily duration of 3313 can be considered "significant[]"[7] and "meaningful[]"[8] on many days during the Relevant Period because it would change the risk profile of 3313.
- Dr. Maloney will testify that the risk profile of 3313 would change because its economic exposure to interest rates (via duration) would be altered, as illustrated by certain tables and analyses prepared by Mr. Dolgoff, which are being produced today in the file path Maloney > Trade Reassignment. For example, Dr. Maloney will testify that in his opinion:
    - an average absolute value duration impact of full single-day trade reassignment on 3313 of 1.36 years on the top duration impact quintile (20%) of the days in the Relevant Period (compared to the average daily absolute value duration change of 0.78) is evidence that the actual allocations to Macro Opps had a "meaningful" impact on duration;
    - the duration impact of full single-day trade reassignment on 3313 moving duration outside account limits on 34 days that were previously within limits (of

---

[5] Cohen Disclosure ¶¶ 64, 64.c, and 71.c.

[6] For this analysis, Dr. Maloney accepted the correlation calculations and count of number of days outside duration limits that Professors Kolm and Cohen present in their trade reassignment analysis.

[7] Kolm Disclosure ¶ 35.d.

[8] Cohen Disclosure ¶ 64 and 64.c.

which 65% were days when market volatility was elevated)[9] is evidence that duration limits did "meaningfully" impact Mr. Leech's allocations during the Relevant Period; and
  - the average absolute value duration impact of full single-day trade reassignment on 3313 of 0.89 years on the top quintile (20%) of days in the Relevant Period when the fixed income market volatility (per the MOVE Index) was most elevated is evidence that the allocations to Macro Opps were "necessary to manage duration" on the most volatile days within the Relevant Period.
- Dr. Maloney will testify that a reasonable portfolio manager would consider the impact of the Kolm/Cohen Trade Reassignment and Mr. Dolgoff's single-day trade reassignment "significant[]" and "meaningful[]" because, among other reasons, Western Asset Management Company made representations to investors that Macro Opps would "normally" maintain duration within limits (from -5 to +10 years) and because Macro Opps did not exceed those limits frequently during the Relevant Period (including only once in the period from January 1, 2021 to June 1, 2022). This is "significant[]" and "meaningful[]," because the full single-day trade reassignment under Mr. Dolgoff's analysis would:
  - increase the <u>number</u> of days outside limits in the Relevant Period by 29 days from 19 to 48 days with 28 of those 29 additional days occurring in the period June 1, 2022 to October 20, 2023; and
  - increase the <u>magnitude</u> of the average limit excess when outside the limit from 0.5 years to 0.76 years.
- Dr. Maloney will further testify that, even if duration remains within account limits, when portfolio duration varies from a desired duration level, the impact of future unpredictable rate moves on the portfolio can be adverse.
  - For example, when duration is approximately 0.5 years different from its desired level, the return impact from a 15 basis point rate move would be 7.5 basis points. For a $15 billion dollar fund, this could translate to an unintended $112.5 million loss.
- Dr. Maloney will testify that to further assess the conclusions Professors Kolm and Cohen reached from the Kolm/Cohen Trade Reassignment, he performed a regression analysis using Mr. Dolgoff's single-day trade reassignment analysis results for 3313. He will testify that this regression analysis demonstrates that the daily duration impact of the trades Mr. Leech allocated only to Macro Opps have the opposite sign to the daily duration changes to 3313 in the absence of the trades. He will testify that this result illustrates that the trades Mr. Leech allocated only to Macro Opps mitigated the impact to 3313 resulting from the daily duration changes in the absence of the trades, and therefore, had the effect of managing 3313 back toward its start of day duration.

---

[9] Five days that were outside account limits prior to trade reassignment would be inside the limits after the full single-day trade reassignment, resulting in 29 net new days outside account limits.

  - Dr. Maloney will further testify that if the trades Mr. Leech allocated only to Macro Opps and only to the Core Strategies were reassigned, the reassigned allocations to 3313 would magnify the impact resulting from the daily duration changes in the absence of the trades.
- In addition, Dr. Maloney will testify that he performed a second regression analysis using Mr. Dolgoff's single-day trade reassignment analysis results for 3313 using the estimated passive duration drift from interest rate movements, which is driven by 3313's negative convexity. He will testify that this second regression analysis demonstrates that the daily duration impact of the trades Mr. Leech allocated only to Macro Opps have the opposite sign to the estimated passive duration drift from interest rate movements. He will testify that this result illustrates that the trades Mr. Leech allocated only to Macro Opps mitigated the impact to 3313 resulting from the estimated passive duration drift due to interest rate movements, and therefore, had the effect of managing 3313 back toward its start of day duration.
  - Dr. Maloney will further testify that if the trades Mr. Leech allocated only to Macro Opps and only to the Core Strategies were reassigned, the reassigned allocations to 3313 would magnify the impact resulting from passive duration drift due to interest rate movements.

## II. RESERVATION OF RIGHTS TO SUPPLEMENT DISCLOSURES

Dr. Maloney reserves his right to supplement and/or amend this disclosure, including in response to evidence the government presents in its case-in-chief.

* * *

Please let us know if you have any questions. We are available to meet and confer to further discuss these disclosures.

Very truly yours,

Jonathan S. Sack
Jeremy H. Temkin
MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO PC
565 Fifth Ave.
New York, NY 10017
(212) 856-9600

Joon H. Kim
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2950

Reviewed and Approved By:

Dr. Kevin Maloney