# Exhibit E

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG
LISA ZORNBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

jsack@maglaw.com
(212) 880-9410

COUNSEL
JOSHUA BUSSEN
PIPPA HYDE***
KEFIRA WILDERMAN

RETIRED/PARTNER EMERITUS
PAUL R. GRAND

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT
***ALSO ADMITTED IN ENGLAND AND WALES

November 20, 2025

**BY EMAIL**

Peter J. Davis, Esq.
Thomas Burnett, Esq.
Assistant United States Attorneys
Southern District of New York
United States Department of Justice
26 Federal Plaza
New York, NY 10278

Lindsey Keenan, Esq.
Special Assistant United States Attorney

**Re: *United States v. Leech*, No. 24 Cr. 658 (GHW) (S.D.N.Y.)**

Dear Messrs. Burnett and Davis and Ms. Keenan:

Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C) and the Court's order dated June 4, 2025 (Dkt No. 30), this letter supplements the defense's expert disclosure for Aaron Dolgoff. In response to the government's expert disclosures on October 23, 2025, Mr. Dolgoff may provide additional testimony rebutting testimony of the government's experts.

The basis of Mr. Dolgoff's opinions are his qualifications described in his October 23, 2025 disclosure, the materials described in that disclosure, his review of the expert disclosures provided by the government's experts Professors Petter Kolm and Lauren Cohen dated October 23, 2025, additional materials produced being produced today, and the further analysis described below. Accompanying this disclosure are data files produced in the following file paths: Dolgoff > Binomial Regressions; Dolgoff > Holding Period; Dolgoff > KS and MWU Tests; Dolgoff > Profit Reversal; and Dolgoff > Trade Reassignment. In addition, certain large data files will be produced separately.

Set forth below is a summary of Mr. Dolgoff's anticipated testimony.

## I. SUMMARY OF ANTICIPATED TESTIMONY

In response to Professor Lauren Cohen's holding period analysis and opinions:

- Mr. Dolgoff will testify that Professor Cohen's holding period analysis of Mr. Leech's Treasury F&O trades is flawed. Mr. Dolgoff will describe each of errors discussed below and present a summary output of Professor Cohen's program after the correction of the errors.
    - Mr. Dolgoff will testify that there is an error in Professor Cohen's programming code in Professor Cohen's calculation of the holding period associated with the portion of a position that is calculated to be only partially closed through matching trades. Mr. Dolgoff will present a summary output of Professor Cohen's code after correction of this error.
    - Mr. Dolgoff will testify that Professor Cohen omitted Treasury options trades from his holding period analysis. Mr. Dolgoff will present a summary output of Professor Cohen's code after inclusion of Treasury options trades, which represent 18,533 trades out of 31,851 Treasury F&O trades.[1]
    - Mr. Dolgoff will testify that Professor Cohen's holding period analysis is flawed in its inclusion of "futures roll ticket" trades because such trades may not necessarily entail a complete economic offset of a position. While such trades might include exiting a particular instrument, they are often duration neutral (or close to neutral) – for example, selling a certain amount of duration at one tenor and buying equivalent duration at another tenor. Such trades are not necessarily indicative of an intent to completely offset earlier trades in the same way as, for example, a sale offsets an earlier purchase. Mr. Dolgoff will present a summary output of Professor Cohen's code after exclusion of futures roll tickets (both with and without inclusion of Treasury options trades).
- Mr. Dolgoff will testify that Professor Cohen's holding period analysis does not consider the extent to which first day gains (or losses) of At Issue trades would be at risk over different holding periods.[2]
    - Professor Cohen's holding period analysis focuses on purportedly "offsetting" trade allocations within one day and three days of an allocation. Mr. Dolgoff will testify that there is risk in holding a position, and that risk compounds over longer holding periods.
    - To illustrate the risk of holding a position, Mr. Dolgoff calculated and will summarize the percentage of At Issue trades whose first day gains (or losses)

---

[1] This calculation is based on the number of Trade IDs between January 1, 2021 and October 19, 2023 for accounts 3313, 984, and 671.

[2] At Issue trades are those defined in Mr. Dolgoff's October 23, 2025 disclosure. (Dolgoff October 23, 2025 Disclosure at 2 n.2).

would be reversed under different holding periods. Specifically, for each At Issue trade, Mr. Dolgoff calculated the gain or loss under the assumption that the position had been held for one to thirty days (i.e., that the position would have been exited between one and thirty days after the initial trade). For each trade, Mr. Dolgoff calculated the first day after the initial trade on which the sign of the return was reversed, indicating that the first day gain would reverse to a loss position, and vice versa. These calculations took into account whether the relevant holding period included an options expiration (at which point an in-the-money position would be converted to the underlying futures position via options exercise) or a futures roll date (at which point the current futures contract maturity is sold [or bought] and a next maturity of equal tenor is purchased [or sold]).

- Mr. Dolgoff will summarize the results of this analysis, including showing that approximately 28% of At Issue trades would have their first day gains (or losses) reverse within a single day, approximately 48% would reverse within three days, and approximately 69% were reversed within 20 days (where 20 days is the approximate average holding period calculated by Professor Cohen).[3] Mr. Dolgoff may also summarize the percentage of trades whose first day gains (or losses) would reduce by amounts less than a full reversal.

- Mr. Dolgoff will testify that empirical economic literature shows that Treasury market risk (as measured by volatility) is highest in the morning trading hours (Eastern time zone), coinciding with the timing of most economic information releases.[4] Mr. Dolgoff will explain that for purposes of assessing whether Mr. Leech had intended to offset a previously allocated position, it would be appropriate to consider whether a trade occurred prior to the market open (i.e., during the overnight / early morning trading hours), which would have avoided this Treasury market risk. Using Professor Cohen's holding period programming code, Mr. Dolgoff will illustrate that the percentage of trades offset prior to 6 a.m. (Eastern time zone) is lower than the percentage Professor Cohen measures and presents at a one-day interval and that the positions that Professor Cohen

---

[3] Mr. Dolgoff's calculations consider whether the first day gain or loss is reversed at any day over the relevant holding period. For example, over a three-day holding period, a trade is considered reversed if the sign of the cumulative return changes from the first day to any of the following three days (regardless of whether the sign subsequently reverses again). The calculations exclude At Issue trades with $0 first day gains or losses.

[4] For example, Michael J. Fleming, "The Round-the-Clock Market for U.S. Treasury Securities," *FRBNY Economic Policy Review*, July 1997, 10; Tim Bollerslev, Jun Cai & Frank M. Song, "Intraday periodicity, long memory volatility, and macroeconomic announcement effects in the US Treasury bond market," *Journal of Empirical Finance*, vol 7, 2000, 38.

identified as having been offset after 6 a.m. (Eastern time zone) were subject to this additional Treasury market risk.

In response to Professor Cohen's "Statistical Analyses of Pre-Allocation Returns and FDRs" and related opinions:

- Mr. Dolgoff will testify that he applied Professor Cohen's two non-parametric statistical tests, the Mann-Whitney U and the Kolmogorov-Smirnov tests, to Professor Tuckman's and Mr. Newman's allocation results for representative accounts 3313 and 984.
- Mr. Dolgoff will testify that the results of the application of these tests to Professor Tuckman's allocations are consistent with the results of the statistical tests described in Mr. Dolgoff's October 23, 2025 expert disclosure in that Mr. Dolgoff finds a statistically significant difference in UFP ($) per trade between Professor Tuckman's allocations to 3313 and 984.
- Mr. Dolgoff will testify that the results of the application of these tests to Mr. Newman's allocations are also consistent with finding a statistically significant difference in UFP ($) per trade between Mr. Newman's allocations to Macro Opps and the Core Strategies.

In response to Professor Cohen's "binary" [logistic] regression analysis and related opinions:

- Mr. Dolgoff will testify that Professor Cohen's regression analysis does not consider the duration impact of intraday changes in interest rates between the time of trade and trade allocation. Mr. Dolgoff considered the impact of such changes in interest rates by modifying Professor Cohen's regressions as follows:
  - Mr. Dolgoff estimated "Passive Duration Change" (i.e., duration change resulting from market movement rather than a trading decision) based on:
    - the change in the 10-year Treasury yield between trade execution time and blotter-recorded trade allocation time; and
    - the duration and convexity of account 3313 as of the end of the prior day.
  - Mr. Dolgoff then created a variable indicating whether the duration of a trade is in the opposite direction as the Passive Duration Change. This variable was included in the logistic regressions estimated by Professor Cohen in lieu of the measures of Pre-Allocation profitability used by Professor Cohen. Mr. Dolgoff otherwise kept Professor Cohen's regressions unchanged.
  - Based on the results of the revised logistic regressions, Mr. Dolgoff will testify that whether a trade assists in managing the Passive Duration Change "contains far more explanatory ability for Leech's allocation decisions than do trade size, trade convexity, trade time-to-maturity, or interest rate movements prior to

trade,"[5] just as Professor Cohen concluded about his measures of Pre-Allocation profitability in his regressions.

- Mr. Dolgoff may present tables summarizing the results of Professor Cohen's regressions in comparison to the results of the modified regressions described above.

In response to Professor Petter Kolm's and Professor Cohen's trade reassignment calculations (the "Kolm/Cohen Trade Reassignment") and related opinions:[6]

- Mr. Dolgoff will present summary tables or charts comparing the output of his trade reassignment calculations (described in his expert disclosure dated October 23, 2025) with the output of the Kolm/Cohen Trade Reassignment. Mr. Dolgoff will testify that the two approaches are similar, but that there are days in the analysis with large differences between his calculations and the Kolm/Cohen Trade Reassignment calculations. Mr. Dolgoff will explain that he identified five reasons for such differences.[7]
  - Three of these reasons relate to errors in the Kolm/Cohen Trade Reassignment:
    - The Kolm/Cohen Trade Reassignment rely on estimates of the contribution of individual trades to portfolio duration ("duration contribution")[8] that inappropriately mix inputs based on: (1) trade value as of the <u>trade time</u>, (2) portfolio market values as of the <u>end of day</u>, and (3) security duration as of the <u>end of day</u>, rather than all three inputs measured consistently as of the end of day as used in Mr. Dolgoff's calculations.[9]

---

[5] Professor Lauren Cohen's expert disclosure dated October 23, 2025 ("Cohen Disclosure") ¶ 72.j.

[6] Professors Kolm and Cohen rely on the same underlying trade reassignment analysis.

[7] Mr. Dolgoff's analysis is based on data previously provided in connection with his disclosure dated October 23, 2025, data and programs provided in connection with the Kolm and Cohen Disclosures, and additional calculations performed and disclosed in connection with this letter.

[8] In calculations provided by the Western Asset Management Company, duration contribution is equal to the duration of the security multiplied by its weight in the portfolio (trade value (price x quantity) / portfolio market value). For purposes of calculating the duration contribution of futures positions, the dollar contribution of duration is included but there is no market value contribution of a futures position to the portfolio total market value.

[9] Mr. Dolgoff will explain that the duration contribution data used in his calculations is consistent with the data that Professors Kolm and Cohen used to calculate the end of day account durations.

        - The Kolm/Cohen Trade Reassignment does not re-weight the duration contributions of portfolio components resulting from the impact of trade reassignments on the market value of the portfolio.

        - The Kolm/Cohen Trade Reassignment does not account for the exercise of options that expired in-the-money, resulting in futures positions in the relevant portfolios.

    - Two additional reasons for differences between Mr. Dolgoff's calculation and the Kolm/Cohen Trade Reassignment relate to differences in methodology:

        - The Kolm/Cohen calculations use a different weighting assumption when determining how much of a reassigned trade would be assigned into an account when a trade is reallocated from one strategy to the other.

        - The Kolm/Cohen Trade Reassignment is based on a different set of At Issue trades.

- Mr. Dolgoff will testify that Professors Kolm and Cohen calculate the correlation between actual account durations and their calculation of account duration after trade reassignment. Professor Kolm concludes from this correlation analysis that "duration limits did not significantly constrain Mr. Leech's flexibility in allocating Treasury F&Os."[10] Professor Kolm also concludes from the correlation analysis that the "allocations to Macro Opps were not necessary to manage duration."[11] Professor Cohen similarly concludes that "while Macro Opps and the Core Strategies had different duration restrictions, those restrictions did not, in practice, meaningfully constrain how Mr. Leech allocated Treasury F&Os between the strategies" and presents the above-described correlation analysis as a part of the support for this conclusion.[12]

- Mr. Dolgoff will testify that the correlation analysis described above over the period from January 2021 to October 2023 does not consider whether trade reassignment would result in additional days where duration exceeds limits or larger impacts on end of day duration for different sub-periods.

- Mr. Dolgoff will testify that Professors Kolm and Cohen's correlation analysis is flawed because even highly correlated data series can have meaningful differences. Mr. Dolgoff will illustrate this by presenting the correlations between actual account durations and

---

[10] Professor Petter Kolm's disclosure dated October 23, 2025 ("Kolm Disclosure) ¶ 35.d.

[11] Kolm Disclosure ¶ 35.f.

[12] Cohen Disclosure ¶ 64.

durations adjusted by either a fixed amount, or by random amounts (where such random adjustments are based on either uniform or normal distribution).

- Mr. Dolgoff will present summary tables highlighting the number of days that duration changes by a given amount based on trade reassignments under both his calculations and those of Professors Kolm and Cohen.
- Mr. Dolgoff will present summary tables showing the distribution of the magnitude of the duration changes from trade reassignments.
- Mr. Dolgoff will present summary data showing that the magnitude of the duration changes from trade reassignments varies with market conditions.
- Mr. Dolgoff will testify that the Kolm/Cohen Trade Reassignment assume that each day is treated individually – i.e., that the reassignment of trades is assessed only with respect to a given day's trade allocations and not prior days. Mr. Dolgoff will explain that there is no principled reason to assume the portfolios would "reset" each day prior to reassigning the next day's trades. Mr. Dolgoff will provide illustrations showing that the cumulative effect of trade reassignment over several days results in larger deviations of account durations as compared to actual account durations. To illustrate, Mr. Dolgoff will present charts comparing the single-day trade reassignment results to cumulative trade reassignment results for a sample of calendar weeks. Mr. Dolgoff will also present tables or charts summarizing the impact of cumulative trade reassignments on the number of days that an account's duration would have been outside its duration limits and the magnitude of the impact on account durations.

## II. RESERVATION OF RIGHTS TO SUPPLEMENT DISCLOSURES

Mr. Dolgoff reserves his right to supplement and/or amend this disclosure, including in response to evidence the government presents in its case-in-chief.

* * *

Please let us know if you have any questions. We are available to meet and confer to further discuss these disclosures.

Very truly yours,

Jonathan S. Sack
Jeremy H. Temkin
MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO PC
565 Fifth Ave.
New York, NY 10017
(212) 856-9600

/s
Joon H. Kim
CLEARY GOTTLIEB
STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2950

Reviewed and Approved By:

Aaron Dolgoff