UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
                                                                           :

    UNITED STATES OF AMERICA         :     DECLARATION

                        - v. -                         :     24 Cr. 658 (GHW)

    S. KENNETH LEECH II,                   :

              Defendant.                 :

------------------------------------------------------- x

       Molly Canick, pursuant to Title 28, United States Code, Section 1746, declares under penalty of perjury as follows:

       1.      I am an Assistant United States Attorney in the Office of Jay Clayton, United States Attorney for the Southern District of New York. I am the Privilege Review Coordinator responsible for the above-captioned matter, and as such, I am familiar with the facts and circumstances of the filter review process implemented by the Government in this case. This declaration is made in response to the Court's order dated November 7, 2025, directing the Government to provide sworn statements regarding the filter process, including "the reasons why any privileged materials may have moved through that net" (11/7/25 Tr. at 100).

       2.      I have served in the role of Privilege Review Coordinator since I became an AUSA about two- and one-half years ago. I supervise law clerks contracted by the United States Attorney's Office in the Southern District of New York ("SDNY") to work exclusively on filter reviews. Neither I nor the law clerks are members of any investigative or prosecutive team, including the team responsible for the investigation and prosecution of this matter (the "Case Team"). The team responsible for reviewing data for privilege in this matter (the "Filter Team")

1

comprises these law clerks, along with me, and any other attorneys, agents or support staff who may be assigned but who are not and never will be members of the Case Team. The goal of the filter process is to identify and segregate materials that may be subject to a claim of attorney-client privilege or work product protection. The Filter Team is not, however, charged with making final privilege determinations and the filter process often results in non-privileged material being segregated as a matter of caution.

3. In preparing this Declaration, I reviewed emails with the Case Team and other members of the Filter Team, my calendar and notes, audit logs of the review, document coding and tagging, the defendant's privilege logs and content of specific documents on those privilege logs, other documentation of the filter review process, as well as the legal filings in this matter. This Declaration reflects my best recollection of the events and actions described below based upon my personal knowledge and my review of those materials. Because this Declaration is being submitted for the purpose of addressing the Court's request for information regarding the filter review process, it does not include every detail of my involvement in this matter.

Google Data

4. On or around March 12, 2024, the Case Team requested review of a Google account associated with the defendant (the "Google Data") for any material potentially subject to the attorney-client privilege or work product protection. The Google Data was obtained pursuant to a search warrant and processed for review into the Relativity platform by the SDNY Electronic Evidence Unit (the "SDNY EEU") with support from a vendor (the "Relativity Vendor"). The SDNY EEU instructed the Relativity Vendor to lock the Google Data so that only the Filter Team and users with administrative permissions had access. As a result, the Case Team did not have access to the Google Data at this time.

5.      Shortly after the Google Data was loaded to Relativity on or around the end of March 21, 2024, the Filter Team began to conduct a review. The purpose of the review was to identify records potentially subject to a valid assertion of attorney-client privilege or work product protection. The Filter Team started by directing the Relativity Vendor to index the data and run searches for law firm domains known to represent the defendant. These searches returned hits on approximately two thousand files, which were segregated into a folder labeled as potentially privileged. The Filter Team then continued their review with an iterative process including searching for legal generics and reviewing those hits for potentially privileged material. Relativity does not maintain an audit log that would document these steps, but they are routine and based on my records and knowledge of Filter Team practices, the Filter Team searched for legal generics such as law, legal, llc, and esq in the "To" field, and then repeated these same searches in the "From" field, "CC" field and "BCC" field. After each search, the Filter Team reviewed all the search returns for false positives. The Filter Team also searched for privilege designations such as "Attorney-Client Privileged" and "Attorney Work Product" within the content of the Google Data. Again, after each search, the Filter Team reviewed all the search returns for false positives, including inapplicable boilerplate language such as that in some email footers. After performing these targeted searches and individually reviewing all the hits, the Filter Team identified approximately sixty additional potentially privileged files and placed a request with the Relativity Vendor to move the sixty files into the folder labeled as potentially privileged. After the Relativity Vendor confirmed that the sixty files had been moved, the Filter Team double-checked that none of the files identified as potentially privileged remained in the folder that would be made accessible to the Case Team. Finally, the Filter Team placed a request with the Relativity Vendor to unlock the folder cleared of potentially privileged material for the Case Team.

6.     On or around April 5, 2024, the Filter Team released the Google Data to the Case Team, except for the material that the Filter Team had identified as potentially privileged (the "April 5 Filtered Google Data"), which was segregated into a locked folder inaccessible to the Case Team. As is the usual practice, the Filter Team instructed the Case Team to immediately pause their review and notify the Filter Team if they came across any material that they thought might be privileged.

7.     On or around April 19, 2024, the Case Team notified the Filter Team that they had come across material that might be privileged in the April 5 Filtered Google Data, paused their review, and requested a supplemental filter review. An audit of this process is not maintained in Relativity but based on my records and knowledge of Filter Team practices, the Filter Team attempted to replicate the case-specific, topical searches that the Case Team had run before coming across the potentially privileged material. The Filter Team then reviewed the files hitting on these case-specific, topical searches for any indication of attorney involvement or preparation of material for litigation or other investigations. The goal of this process would be not only to identify and segregate any of these specific search hits as potentially privileged, but also to figure out methods of identifying other material outside the search hits which might be similarly protected by attorney work product or attorney-client privilege. After review and consideration of several hundred files, the Filter Team identified approximately ninety-five additional files as potentially privileged. These files were comprised of emails the defendant sent to himself and his son. Approximately eight of these emails included the subject "privilege." Based on my review of these files in connection with preparation of this Declaration, I believe it is likely that the reason these eight emails were missed in the initial screen, besides the absence of an attorney participant, is that a

4

search for the single term "privilege" was not implemented to mechanically screen out hits.[1] Based on my review of these files in connection with preparation of this Declaration, I believe it is likely that the reasons the remaining emails the defendant sent to himself and to his son may have been missed in the initial screen, setting aside the absence of an attorney participant, are that the subject line was blank, the content itself did not present as legal in nature but instead as business oriented, and none of the emails included any clear designation that they were made at the direction of counsel or protected by attorney work product or attorney-client privilege. Additionally, communications with family members are particularly challenging to identify as privileged when they lack an attorney participant or other clear indication of privilege to distinguish them from communications within the non-privileged relationship. On or around April 22, 2024, these ninety-five files were removed from the folder accessible to the Case Team (the "April 22 Filtered Google Data"), who were advised that they could resume their review.

8. On or around April 23, 2024, the Case Team notified the Filter Team that they had come across material that might be privileged in the April 22 Filtered Google Data, paused their review, and requested a supplemental filter review. An audit of this process is not maintained in Relativity but based on my records and knowledge of Filter Team practices, the Filter Team located communications with an individual named Dexter Senft, who the Case Team thought might be acting as an expert. The Filter Team reviewed hundreds of communications with Dexter Senft in an attempt to understand his role. During this process, the Filter Team identified at least one other individual who appeared to have been acting as an expert. The Filter Team identified approximately eighty-four additional files as potentially privileged, comprised mostly of emails

---

[1] At the time of this review, the term "privilege" was not used as a standalone term to segregate materials. In my experience, the term, on its own, often returns false hits such as news articles and credit card promotions. The Filter Team has, in an effort to broadly identify files appropriate for further review, amended our standard protocol to include a search for "privilege" in the subject line of emails.

that the defendant sent to Dexter Senft and Autumn Soukup. Based on my review of these files in connection with preparation of this Declaration, I believe it is likely these emails were missed during the initial screen because, besides the absence of an attorney participant, they did not include any facially legal content or clear designation that they had been prepared at the direction of an attorney. Additionally, Dexter Senft appears to have had a pre-existing personal relationship with the defendant and many of the communications with him were purely personal or social. The Filter Team conducted a file-by-file review to separate these personal communications from those which might be protected by attorney-client privilege or attorney work product. Approximately twenty-four of the emails with Dexter Senft included the subject "privilege." As described above in paragraph 7, the single term "privilege" was not implemented to mechanically segregate hits as potentially privileged in the initial screen. On or around April 26, 2024, these eighty-four files were removed from the folder accessible to the Case Team (the "April 26 Filtered Google Data"), who were advised that they could resume their review.

9. On or around May 14, 2024, the Case Team notified the Filter Team that they had come across material that might be privileged in the April 26 Filtered Google Data, paused their review, and requested a supplemental filter review. An audit of this process is not maintained in Relativity but based on my records and knowledge of Filter Team practices, the Case Team tagged several files so that the Filter Team could locate and review them. The Filter Team located and reviewed an email between the defendant and his wife with an attached note from the defendant's wife to Dexter Senft. Based on my review of this file in connection with preparation of this Declaration, I believe it is likely that this email and attachment were not captured in the initial screen because the parent email did not include as a participant either an attorney or Dexter Senft. Neither the parent email nor attached note contained any clear indication of privilege. The Filter

6

Team then ran a series of searches for any similar files and identified a duplicate copy. The Filter Team tagged these four additional files as potentially privileged. The Case Team had also flagged another email that the defendant sent to himself, which the Filter Team reviewed and did not segregate as potentially privileged. This email includes no content other than a non-working link to a Google Drive file named "RFH Work Product." On or around May 15, 2024, these four files were removed from the folder accessible to the Case Team (the "May 15 Filtered Google Data"), who were advised that they could resume their review.

        10.     On or around July 24, 2025, the Case Team expressed concern that there may have been a technical issue in loading the Google Data to Relativity resulting in loss of data because they were unable to locate certain information including search history and calendar entries. The SDNY EEU was asked to investigate the processing of the Google Data, which was determined to have been without error. The Filter Team also checked if this data had been inadvertently screened out. An audit of this process is not maintained in Relativity but based on my records and knowledge of Filter Team practices, the Filter Team with the assistance of the SDNY EEU, identified two search history files and one calendar file, which had been segregated as potentially privileged. These three files are approximately 1,035 pages, 1,096 pages and 354 pages in length. The Filter Team loaded each of the files and reviewed the contents to confirm that these were records of search history and calendar entries, but did not conduct a page-by-page review of each file due to length, loading and searching issues, and formatting that made the files difficult to read. Because search history records and calendar entries do not usually contain attorney-client privileged communications or attorney work product, on or about July 25, 2024, the Filter Team released these three files to the Case Team by placing a request with the Relativity Vendor to move the files into the folder to which the Case Team had permissions to access.

7

Apple iCloud Data

11.     In or around April 29, 2024, the Case Team requested review of Apple iCloud data associated with the defendant (the "iCloud Data") for any material potentially subject to the attorney-client privilege or work product protection. The iCloud Data was obtained pursuant to a search warrant and processed for review by the Computer Analysis Response Team of the Federal Bureau of Investigation ("FBI CART") using Cellebrite digital forensic software. Cellebrite is used primarily to process mobile phone and tablet data, extracted from either a cloud account or physical device. Because mobile phones and tablets are used for multiple purposes like text messaging, listening to music, taking photos, and browsing the internet, the extracted data is comprised of a variety of different types of digital files, which Cellebrite organizes into dozens of categories such as chats, images, audio, notes, search history, and calendar entries. The iCloud Data was returned from two separate accounts associated with the defendant and processed into eleven individual Cellebrite reports.

12.     The Filter Team loaded and reviewed each of the eleven Cellebrite reports generated from the iCloud Data and tagged files identified as potentially privileged. An audit of this process is not maintained in Cellebrite but based on my records and knowledge of Filter Team practices, for each of the eleven reports, the Filter Team opened all the data categories and implemented review techniques specifically designed to identify potentially privileged material within that particular category.  For example, the Filter Team opened Chats and searched the participant field for known attorney mobile numbers, first and last names with variations, law firm names, and legal generics such as "attorney" and "lawyer." Searches in Cellebrite are run one at a time, so if hits were returned on any of the search terms, those hits would be reviewed before progressing to the next term. The Filter Team then searched the content of all the Chats with legal

generics, attorney and law firm names as well as case specific legal terms. Again, the searches were run one at a time, with a review of any hits before progressing to the next term. Depending on the size of the Cellebrite report, each search may take a few minutes to process. After performing searches of Chats, the Filter Team scrolled through the list of Chats and opened and reviewed any messaging with unknown or unidentified participants. This same or similar process was repeated for each of the searchable data categories with terms appropriate to the category. The Filter Team also implemented review techniques and strategies for unsearchable data such as images and documents. For the Document data category, the Filter Team searched and scanned file names, filtered by file format, reviewed files in the preview panel and conducted some targeted file-by-file review. For the Images data category, the Filter Team sorted the data by file format and size and then scrolled through the files in thumbnail view. The Filter Team opened files appearing to be screenshots of emails or text messaging or photos of documents. Whenever the Filter Team identified a file as potentially privileged, a tag would be placed on the file and manually saved because Cellebrite does not automatically save tags.

13.     After the Filter Team reviewed the iCloud Data and tagged files identified as potentially privileged, a forensic examiner from FBI CART then removed the files that had been tagged as potentially privileged and generated a version of the iCloud Data that would be double-checked by the Filter Team and released to the Case Team (the "Filtered iCloud Reports"). Because the iCloud Data was processed by FBI CART into eleven individual Cellebrite reports, this process of review, redaction, QC and release was sometimes performed on a rolling basis.

14.     On or around August 1, 2024, the Filter Team finished review of the iCloud Data and sent tags of the files identified as potentially privileged to FBI CART to generate the Filtered iCloud Reports. The Filter Team and FBI CART worked together to remove all the tagged

9

potentially privileged material. On or around August 5, 2024, three of the eleven Filtered iCloud Reports were released to the Case Team (the "August 5 Filtered iCloud Reports"). On or around August 8, 2024, the remaining eight Filtered iCloud Reports were released to the Case Team (the "August 8 Filtered iCloud Reports").

15. On or around August 9, 2024, the Case Team notified the Filter Team that they had come across material that might be privileged in the August 8 Filtered iCloud Reports, had paused their review, and requested a supplemental filter review. The Filter Team subsequently identified additional potentially privileged material including text messaging with Dexter Senft. Based on my review of my records in connection with preparation of this Declaration, I believe it is likely that this material was not identified as potentially privileged during the initial screen because it neither included an attorney participant, nor was it clearly marked as protected by attorney work product or attorney-client privilege. Furthermore, as discussed above in paragraph 9, Dexter Senft appears to have had a pre-existing personal relationship with the defendant so that communications with him do not always outwardly appear to be legal in nature.

16. On or around August 12, 2024, the Filter Team sent their updated tags to FBI CART to generate new Cellebrite reports with potentially privileged material removed and worked with FBI CART to confirm that all the potentially privileged material had been removed. On or around August 15, 2024, nine of the eleven Cellebrite reports were released (the "August 15 Filtered iCloud Reports").

17. On or around August 15, 2024, the Case Team notified the Filter Team that they had come across an indication that there might be privileged material in the August 15 Filtered iCloud Reports, had paused their review and requested a supplemental filter review. Specifically, the Case Team reported seeing a file path associated with the first name of one of the known

attorneys. Based on my review of my records in connection with preparation of this Declaration, including documentation that the Filter Team performed many searches on the iCloud Data for attorney names, and a manual review of much of the unsearchable data, I believe it is likely that this file was missed during the initial screen because the terms were not in the body of the document but were located in a file path or metadata field which was not searchable or easily visible during the review.

18. On August 16, 2024, the Filter Team prepared six Cellebrite reports containing text messaging that had not been identified as potentially privileged (the "August 16 Filtered iCloud Messaging Reports") and shared with the Case Team via secure file transfer platform.

19. On or around August 23, 2024, the Filter Team finished a supplemental review of the iCloud Data and released a new set of eleven Cellebrite reports with additional potentially privileged material removed (the "August 23 Filtered iCloud Reports"). Defense counsel has asserted privilege over a chat thread contained in one of these reports and listed it on their privilege log as including Ralph Hirschmann. This is a chat thread with two participants and five messages. Based on my review of this file in connection with preparation of this Declaration, I believe it was likely not identified as potentially privileged by the Filter Team because Ralph Hirschman's name does not appear, and his participant information is limited to his phone number. There is no other clear indication within the content of the chat that it is protected by attorney-client privilege. Additionally, the chat does not contain legal advice but logistics of coordinating an introduction with a contact card attached.

20. On or around August 28, 2024, the Case Team notified the Filter Team that they had come across material that might be privileged in the August 23 Filtered iCloud Reports, had paused their review and requested a supplemental filter review. The Filter Team identified an email

11

with an attachment as potentially privileged. Based on my review of this file in connection with preparation of this Declaration, I believe this email was likely missed during the initial screen because it does not include an attorney participant but only the defendant and his spouse. The subject of the email was "Ex 1" and included no content. The attachment was marked "Confidential" but did not include any other indication of attorney-client privilege or work product protection.

21. On or about August 29, 2024, the Filter Team released a new set of eleven Cellebrite reports with the email and attachment referenced in paragraph 20 removed from two separate reports (the "August 29 Filtered iCloud Reports").

22. On or about August 30, 2024, the Case Team notified the Filter Team that they had come across additional email that might be privileged in the August 29 Filtered iCloud Reports and had paused their review. Because of the challenges of performing a screen in Cellebrite across eleven separate reports, the Filter Team extracted all the Email, Exchange files and Documents from the iCloud Data and sent that data to be loaded and reviewed in Relativity.

23. On or about September 6, 2024, the Filter Team finished a supplemental review of the iCloud Data and released a new set of eleven Cellebrite reports with all the potentially privileged material removed, along with all the Email, Exchange files and Documents removed (the "September 6 Filtered iCloud Reports").

24. As part of the filter process, when the Filter Team identified additional potentially privileged material in the Apple iCloud Data and new reports were generated, the Filter Team in each instance recalled any hard drives with copies of the previously filtered iCloud reports and confirmed that FBI CART removed permissions to access the previously filtered iCloud reports

on the FBI network. FBI CART did not provide permissions for the Case Team to access any material on the FBI network other than Filtered iCloud Reports.

25. By early to mid-September 2024 the Case Team was engaged directly with defense counsel regarding privilege assertions.

\* \* \*

26. The Filter Team's objective in conducting a review of the Google Data and iCloud Data was to protect potentially privileged material on behalf of the defendant and to provide the Case Team with non-privileged evidence to advance their investigation. From my perspective, the Filter Team pursued its objective with diligence and in good faith. Each time the Case Team flagged a potential issue, the Filter Team promptly updated its screen, even when doing so segregated files that appeared unlikely to be subject to a valid claim of privilege.

Dated: New York, New York
       January 21, 2026

By: *Molly Canick*
    Molly Canick
    Assistant United States Attorney
    26 Federal Plaza, 37th Floor
    New York, New York 10278
    (212) 637-1945

13