

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

May 6, 2026

**BY ECF**

Hon. Gregory H. Woods
Southern District of New York
500 Pearl Street
New York, NY 10007

      **Re:**     <u>**United States**</u> v. <u>**S. Kenneth Leech II**</u>**, 24 Cr. 658 (GHW)**

Dear Judge Woods:

The Government writes to make three points in support of its proposed jury instructions as to Count Five of the Indictment.

*First*, the Grand Jury returned an indictment charging the defendant with two independent means of violating 18 U.S.C. § 1001, and the jury should be instructed on both. The defendant is charged with violating Section 1001(a)(1) because he "falsified, concealed, and covered up by any trick, scheme, and device, a material fact." (ECF No. 2 at ¶ 34 (citing Section 1001(a)(1).) And the defendant is charged with violating Section 1001(a)(2) because he "made a materially false, fictitious, and fraudulent statement and representation." (*Id.* (citing Section 1001(a)(2).). The defendant does not dispute that both means of violating Section 1001 are charged in the indictment, yet claims the Court should instruct the jury on only Section 1001(a)(2). There is no basis for that position. The defense did not move to dismiss the indictment with respect to Section 1001(a)(1) and, as set forth below, the Second Circuit has held that similar efforts by a defendant to mislead a federal official are "clear violation[s]" of that provision. *United States v. Stephenson*, 895 F.2d 867, 874 (2d Cir. 1990). Accordingly, the Court should instruct the jury on both Section 1001(a)(1) and 1001(a)(2).

*Second*, because the statutory text of Section 1001(a)(2) includes "fictitious" and "fraudulent" statements—not just "false" statements—the jury should be instructed that misleading statements, even if literally true, violate Section 1001(a)(2). The defendant improperly relies on dicta from *United States v. Mandanici*, 729 F.2d 914, 921 (2d Cir. 1984), which suggested that the standards applicable to perjury charges under 18 U.S.C. § 1621 apply to Section 1001(a)(2). The Second Circuit has repeatedly declined to adopt *Mandanici*'s dicta in Section 1001 cases. And the Supreme Court's recent decision in *United States v. Thompson*, 604 U.S. 408 (2025), dictates that Section 1001(a)(2)'s statutory use of the words "fictitious" and "fraudulent," in addition to the word "false," must be given their plain meaning, which requires instructing the jury that misleading (although literally true) statements violate the statute.

*Third*, the defendant's proposed "ambiguity" instruction is not supported by Second Circuit precedent. The Second Circuit has been clear that, in cases charging violations of Section 1001 based on false or misleading answers to questions, the issue for the jury is to decide how the

defendant understood the question and whether the response was false or misleading. Here, by contrast, the defendant's proposed "ambiguity" instruction improperly takes the focus off of the defendant and asks the jury to judge the defendant's statement against any possible reasonable interpretation of the question, regardless of how the evidence shows the defendant understood it.

Finally, the Government also writes in support of language in its proposed instruction that an investment adviser's fiduciary duties include an "affirmative obligation to employ reasonable care to avoid misleading his clients" and a "duty to disclose all material facts concerning the transaction entrusted to it." (ECF No. 95 at 10.) That instruction derives from Supreme Court precedent and is routinely given in investment adviser fraud trials.

### A. The Indictment Charges Section 1001(a)(1) and 1001(a)(2).

On November 25, 2024, the Grand Jury returned a 22-page speaking Indictment. On pages 16 and 17, the Indictment outlined allegations related to the defendant's "False and Misleading Testimony to the SEC." Paragraphs 21, 22 and 23 allege that the defendant provided sworn testimony to the SEC; that he received training at WAMCO directing him to allocate trades promptly; and that "the SEC viewed a failure to allocate trades promptly as a potential warning sign for cherry picking."

Paragraph 23 further alleges that the defendant knew that he did not allocate trades promptly after trade execution, and in fact, waited to decide how to allocate trades, so that he could make that decision knowing the first-day performance of the trades. The Indictment next alleges that, "to avoid scrutiny of his fraudulent allocation practices," the defendant "lied about his process for allocating trades, falsely claiming, in substance, that he already decided to which strategy trades would be allocated at the time he placed the trade orders."

In paragraph 24, the Indictment alleges that when asked whether typically had an allocation in mind at the time he placed an order with a broker, the defendant responded yes. The paragraph further alleges that Leech asserted that occasionally, if he had the ability to communicate with his trading assistant, he would tell her his allocation instruction just after placing the order. However, the defendant claimed that he typically did not convey his allocation decision until the end of the day because his trading assistant did not sit in close proximity to him. Finally, this paragraph alleges that when the SEC attorney asked again if he had an "allocation instruction in mind" at the time Leech placed the order, Leech again responded yes.

Paragraph 25 alleges that the defendant's responses were "false and misleading." Specifically, the Indictment alleges that Leech "routinely did not decide where to allocate trades until hours after trading—typically late in the day—after he had a chance to observe how his trades had performed during the day, at which point he conveyed his allocation decisions to his trading assistant over the phone."

Paragraph 33 incorporated the factual allegations from paragraphs 1 through 25. Paragraph 34 alleges that the defendant violated both Section 1001(a)(1) and Section 1001(a)(2). That paragraph alleges that, because the defendant "knowingly and willfully falsified, concealed, and covered up by a trick, scheme, and device a material fact, and made a materially false, fictitious, and fraudulent statement and representation, to wit, during testimony before the SEC, LEECH

made false representations that he knew his trade allocation at the time he placed his trade orders with the brokers."

### B. The Jury Should Be Instructed on Section 1001(a)(1).

The defendant is charged with trying to mislead the SEC into believing that the defendant knew his allocation instructions at the time he placed his trade orders to conceal the truth—that he "routinely did not decide where to allocate trades until hours after trading—typically late in the day—after he had a chance to observe how his trades had performed during the day." (ECF No. 2 at ¶ 25.)  Accordingly, the jury should be instructed on the elements of the "concealment" prong of Section 1001(a)(1) as properly alleged in the indictment.

The Second Circuit has described this fact pattern—where a defendant seeks to "mislead" a federal official—as a "clear violation" of the "concealment" prong of Section 1001(a)(1). *United States v. Stephenson*, 895 F.2d 867, 874 (2d Cir. 1990).  In *Stephenson*, the defendant falsely claimed that a vice president had offered him a bribe to "conceal his own initiation of the bribery scheme" in a telephone call with a Special Agent of the Commerce Department. *Id.* at 873-74. The Second Circuit held there was "ample evidence" for the jury to find the defendant "falsified, concealed, or covered up the fact of his solicitation of a bribe." *Id.*  Similarly, in *United States v. Stewart*, the Second Circuit held that a defendant was properly convicted under Section 1001(a)(1) based on statements he made to the SEC.  433 F.3d 273, 318 (2d Cir. 2006).  The Court noted that, under the concealment theory of liability, "[t]he 'essential issue' is whether Defendant knowingly and willingly falsified, concealed, or covered up information relevant to the investigation." *Id.* at 318-19.

The defendant asserts no valid reason for objecting to the jury instructions other than the defendant's incorrect view that the "alternative theory is not applicable to the facts of this case and does not match the evidence." (ECF No. 95 at n. 41.)  The defendant does not dispute that the indictment charges this independent means of violating Section 1001.  The defendant cannot excise a valid charge in the indictment because of his (incorrect) belief that the facts do not establish the elements—that is what the trial is for.

Moreover, the defendant's reliance on *United States v. Diogo*, 320 F.2d 898, 902 (2d Cir. 1963), ECF No. 95 at fn. 41, only reinforces that the Government's jury instructions are appropriate.  The Second Circuit in *Stewart* (decided 43 years after *Diogo*) held that, consistent with *Diogo*, the "concealment" subsection and the "false, fictitious, and fraudulent" subsection are different means of violating Section 1001:  "[t]he several different types of fraudulent conduct proscribed by section 1001 are not separate offenses . . . ; rather they describe different means by which the statute is violated."  433 F.3d at 319-20.  Accordingly, the Government is entitled to instruct the jury on both validly charged means of violating Section 1001.

### C. Section 1001(a)(2) Criminalizes "Fraudulent" and "Fictitious" Statements or Representations.

In addition to "concealment" under Section 1001(a)(1), Count Five charges the defendant with an alternative means of violating Section 1001 under Section 1001(a)(2): "mak[ing] any materially false, fictitious, or fraudulent statement or representation."  Because this statute, by its

plain text, includes "fictitious" and "fraudulent" statements, and not just "false" statements, the jury should be instructed that misleading (even if true) statements can violate Section 1001.

In *United States v. Mangano*, on February 13, 2025, the Second Circuit noted that it had "not squarely decided whether a conviction under 18 U.S.C. § 1001 requires the statements at issue to be literally false, and we decline to do so."  128 F.4th 442, 484 (2d Cir. 2025); *see also United States v. Sampson*, 898 F.3d 287, 306 n.14 (2d Cir. 2018) (noting that the Second Circuit had not "squarely decided" this issue in a precedential opinion); *United States v. Kaplan*, 758 F. App'x 34, 39 (2d Cir. 2018) (noting that "[t]his court has never held that [the standards for perjury convictions] apply to false statement charges under 18 USC § 1001, simply assuming so without deciding").

Prior to *Mangano* and *Sampson*, courts had cited dicta in the Second Circuit's 1984 opinion in *United States v. Mandanici*, 729 F.2d 914, 921 (2d Cir. 1984), for the proposition that "a defendant may not be convicted under § 1001 on the basis of a statement that is, although misleading, literally true." *Mandanici*'s cited authority for that proposition was the Supreme Court's decision in *Bronston v. United States*, 409 U.S. 352 (1973), which addressed a conviction under the perjury statute (18 U.S.C. § 1621) not Section 1001.  The Second Circuit has now three times declined to adopt that dicta as precedent and has noted the fundamental differences between the perjury statute, which penalizes a witness who, under oath, "states or subscribes any material matter which he does not believe to be true," and Section 1001(a)(2), which penalizes, "materially false, fictitious, or fraudulent" statements. *See Sampson*, 898 F. 3d at 306 n.14 (quoting *United States v. Harrod*, 981 F.2d 1171, 1175 (10th Cir. 1992) ("*Bronston* was decided under the federal perjury statute, 18 U.S.C. § 1621, which implicates significantly different policy concerns than does a prosecution under 18 U.S.C. § 1001."))."[1]

On March 21, 2025 (shortly after the Second Circuit's opinion in *Mangano*), the Supreme Court decided *Thompson v. United States*, 604 U.S. 408 (2025).  *Thompson* makes clear that the statutory language controls and decided that Section 1014, which criminalizes only "mak[ing] any false statement[s] or report[s]," and has no other statutory modifiers, does not cover literally true, but misleading statements.  *See id.* at 413-14 ("Given that some misleading statements are also true, it is significant that the statute uses only the word 'false.'").  Section 1001(a)(2), by contrast criminalizes "false" and "fraudulent" statements.  The additional statutory modifier "fraudulent" must be given meaning under *Thompson.*  Accordingly, the jury instruction should penalize both "false" and "fraudulent" statements.

Indeed, following the *Thompson* decision, courts have repeatedly held that statutes that criminalize both "false" and "fraudulent" representations are not limited to purely false statements. For example, in the context of Section 1001 cases, in *United States v. Sabaini*, the Seventh Circuit

---

[1] The perjury statute under 18 U.S.C. § 1621(1) is textually different from Section 1001(a)(2) in a number of ways; most significantly, it does not enumerate "fraudulent" statements.  Section 1621 provides, "Whoever having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true."

held that *Thompson* did not apply to Section 1001(a)(1) because Section 1001(a)(1), as discussed above, criminalizes "not only false statements, but also 'conceal[ing] or cover[ing] up by any trick, scheme, or device a material fact.'"  161 F.4th 1036, at 1047 n.3 (7th Cir. 2025) (noting that *Thompson*'s analysis "turned on statutory text that only penalized 'false' statements or reports, is not relevant here").  Further, in *United States v. Madigan*, the court held that *Thompson* did not apply to the wire fraud statute because "[t]he wire fraud statute criminalizes both 'false or fraudulent pretenses, representations, or promises'—clearly a more expansive standard than the solitary 'false' used in 18 U.S.C. § 1014, which the Court found dispositive in *Thompson*." *United States v. Madigan*, No. 22 Cr. 115, 2025 WL 1836050, at * 23 (N.D. Ill. July 3, 2025); *see also United States v. Reese*, 24 Cr. 402 (VEC), 2025 WL 1770789, at *6 (S.D.N.Y. June 25, 2025) (holding that *Thompson* was legally inapposite to wire fraud because "[t]he absence of broad language in § 1014 was what led the *Thompson* Court to construe that statute narrowly.").

The same statutory-interpretation principle has also been applied outside the context of Section 1001.  For example, in *United States v. Kurleman*, the Sixth Circuit recognized the key statutory differences between Section 1014, which penalizes only "false" statements, and the statutory language present in Section 1001, which penalizes "false" and "fraudulent" statements.  736 F.3d 439 (6th Cir. 2013).  The Sixth Circuit explained that "'[f]alse' and 'fraudulent' representations do not cover the same thing," because "[f]raud has long been understood to include a broader range of deceptive conduct."  The Second Circuit has similarly recognized that, when a statute prohibits both "false" and "fictitious" documents, those terms should be given distinct meanings.  *See United States v. Jones*, 965 F.3d 190, 194 (2d Cir. 2020) (interpreting 18 U.S.C. § 514(a)(2)).

These decisions lead to a clear result here: Section 1001(a)(2) penalizes "false," "fictitious," and "fraudulent" representations.  Because Section 1001(a)(2) it is not limited to "false" representations, the jury should not be instructed that only "false" representations break the law.  Instead, misleading statements, including half-truths, fall within the statute's prohibition.

### D.  The Defense's Proposed Instruction on Hypothetical Ambiguity Is Legally Wrong

The defendant proposes an additional instruction that "[i]f the government's question was ambiguous, so that it reasonably could be interpreted in several ways, then the government must prove the defendant's answer was false under every reasonable interpretation of the question." (ECF No. 95 at Request No. 25.).  This instruction is wrong for three reasons.  First, it is wrong for the reasons described above because "fraudulent" statements are criminalized under Section 1001(a)(2).  An "ambiguity" instruction may be applicable to the perjury statute, but it is not applicable to Section 1001(a)(2).  *See, e.g.*, *Sampson*, 898 F. 3d at 307 n.15 (assuming that the perjury standards applied to Section 1001(a)(2)); *Kaplan*, 758 F. Appx at 39.

Second, even assuming that an "ambiguity" instruction could apply to Section 1001(a)(2), defendant's proposed instruction is not a correct statement of the law.  The defendant's proposed instruction would allow the jury to consider hypothetical interpretations of the questions—even if the defendant did not have those interpretations in his mind at the time of his testimony.  This inquiry into possible interpretations of the questions that the defendant did not adopt is barred by Second Circuit caselaw.

The Second Circuit held in *Sampson* that the question for the jury is whether the defendant's response to the question—as the defendant understood it—was false or fraudulent: "[i]f the response given was false as the defendant understood the question, his conviction is not invalidated by the fact that his answer to the question might generate a number of different interpretations." *Sampson*, 898 F.3d at 307 (quoting *United States Lighte*, 782 F.2d 367, 375 (2d Cir. 1986); *see also Mangano*, 128 F.4th at 483 (the "[j]ury must 'determine whether the question—as the declarant must have understood it giving it a reasonable reading—was falsely answered.'" (quoting *Lighte*, 782 F.2d at, 372-73)). In other words, it is simply a jury question whether the defendant "interpreted the question as . . . . intended" and "knowingly made a false statement in reply." *Sampson*, 898 F.3d at 307. Thus, under *Sampson*, *Lighte*, and *Mangano* it is irrelevant whether a defendant's response could have been true under a hypothetical interpretation of the question that the defendant did not have in mind.

Third, the SEC's questions were not ambiguous and there will be ample evidence that the defendant understood the questions and falsely answered them.

### E. The Government's Proposed Instruction on Fiduciary Duty is Legally Correct and Applicable.

The Court has asked for authority supporting the Government's proposed instruction that investment advisers' fiduciary duties include an "affirmative obligation to employ reasonable care to avoid misleading his clients" and a "duty to disclose all material facts concerning the transaction entrusted to it." (ECF No. 95 at 10 (Request 6).) This instruction is both legally correct and applicable.

The instruction derives from Supreme Court precedent. In *S.E.C. v. Capital Gains Research Bureau*, the Court held that an investment adviser owes "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading [their] clients." 375 U.S. 180, 194 (1963) (quotations omitted)). The Government's proposed instructions has also been charged in numerous investment adviser fraud trials in this District. For instance, in *United States v. Tagliaferri*, 13 Cr. 115 (RA) (June 26, 2014), Judge Ronnie Abrams charged the following:

> Thus, an investment adviser has an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients. I instruct you that a fiduciary owes a duty to disclose all material facts concerning the transaction entrusted to it. The knowing and intentional concealment by a fiduciary of material information which he or she is under a duty to disclose to another, under circumstances where the nondisclosure can or does result in harm to the other, can be a fraud, if the government has proven beyond a reasonable doubt the other elements of the offense.

(Tr. 2752:3-13.) Identical or substantially similar instructions have also been given by the Honorable Vernon S. Broderick in *United States v. Cohen*, No. 23 Cr. 134 (Feb. 27, 2026), the Honorable Jesse M. Furman in *United States v. Castillero*, No. 23 Cr. 622 (Nov. 4, 2025), the Honorable Lewis A. Kaplan in *United States v. LaGuardia*, 19 Cr. 893 (LAK) (Nov. 12, 2020),

the Honorable P. Kevin Castel in *United States v. Bergstein*, 16 Cr. 746 (PKC) (Mar. 1, 2018), and the Honorable Paul G. Gardephe in *United States v. Tuzman*, 15 Cr. 536 (PGG) (Dec. 22, 2017). The consistency of this charge underscores its appropriateness in an investor adviser case, and forecloses any serious dispute that it states the law correctly.

Nor can the defendant credibly contend that the instruction is inapt here. The core allegation is that the defendant willfully violated his fiduciary duties by secretly favoring one set of his clients over others.  Accordingly, these instructions should be included in the charge.

Finally, as the Government stated at the April 27, 2026 conference, the Government is amenable to the Court's suggestion of using a robust description of the defendant's fiduciary duties in Count One (which includes the language above) to avoid repetition in the remaining charges. For Counts Two through Four, the jury should be instructed that, to convict based on a fraudulent violation of the defendant's fiduciary duties, the jury must find that the defendant was a fiduciary.

Respectfully submitted,

SEAN BUCKLEY
Attorney for the Government

by: *Peter J. Davis*
Thomas Burnett/Peter Davis
Assistant United States Attorneys

Lindsey Keenan
Special Assistant United States Attorney
(212) 637-2468/1064/6523

cc:  Counsel (by ECF)