# Volume II

***United States v. Leech*, No. 24 Cr. 658 (GHW) (S.D.N.Y.)**
**Volume II – Exhibits Not Cited in the Sentencing Memorandum on Behalf of S. Kenneth Leech II**

| Exhibit No. | Document |
|---|---|
| **Family, Friends, & Community Members** | |
| 105. | Arata, Thais |
| 106. | Bahoritsch, Linda |
| 107. | Barrett, Miranda J. |
| 108. | Berg, Rick |
| 109. | Bernava, Daniel |
| 110. | Blum, Aurora |
| 111. | Boutilier, James |
| 112. | Boutilier, Patti |
| 113. | Bowman, Karl |
| 114. | Brockwell, Naomi |
| 115. | Bryant, Timothy Lee |
| 116. | Bullock, Scott |
| 117. | Case, George V. |
| 118. | Cook, Kate and Tom |
| 119. | Desodt, Clément |
| 120. | Doshna, Barbara |
| 121. | Dovetta, Benjamin |
| 122. | Dovetta, Lise and Gilles |
| 123. | Dovetta, Marion |
| 124. | Duvall, Sandra |
| 125. | Feis, Steven |
| 126. | Gamick, Anastasia |
| 127. | Geragos, Michael G. |

| Exhibit No. | Document |
|---|---|
| 128. | Griffin, Rick W. |
| 129. | Harker, James G. |
| 130. | Harlow, Peggy |
| 131. | Higginbottom, Brandi |
| 132. | Kildow, Cassandra |
| 133. | Kinder, Kimberly |
| 134. | Knezevich, Karen |
| 135. | McKelvey, Holly |
| 136. | Mims, Carmel |
| 137. | Moar, Harrison E. |
| 138. | Moriconi, Clara |
| 139. | Morris, Dylan H. |
| 140. | Mudera, Aparajita |
| 141. | Mukharji, Auyon |
| 142. | Murphy, Kevin C. |
| 143. | Murray, Kevin |
| 144. | O'Brien, Ken |
| 145. | Palmer, Dr. Tom G. |
| 146. | Powell, Julie A. |
| 147. | Powers, Sandra |
| 148. | Rupinen, Arthur S. |
| 149. | Salembier, C. Hunt |
| 150. | Serr, Madison |
| 151. | Serrano, Octavio |
| 152. | Southwell, Alison Peabody |
| 153. | Stueck, JJ |
| 154. | Stueck, Paul Charles |
| 155. | Swaidan, Karl I. |

| Exhibit No. | Document |
|---|---|
| 156. | Temple, David |
| 157. | Temple Esq., Marisa V. |
| 158. | Tomlinson, Anne |
| 159. | Tucci, Tyler |
| 160. | Wedell, Gerald D. |
| 161. | Wedell, Ramona D. |
| 162. | Yamamoto, Zena M. |
| **Western Asset Management & Industry Colleagues** | |
| 163. | Amici, Veronica |
| 164. | Ayala-Huerta, Irma |
| 165. | Boyle, Joseph M. |
| 166. | Brist, Ryan K. |
| 167. | Budinger, Vernon Hamilton |
| 168. | Carvalho, Ronaldo |
| 169. | Chen-Young, Gerald Alain P. |
| 170. | Conder, Gail S. |
| 171. | Davis, Sara E. |
| 172. | DeAngelis, Jefferson |
| 173. | Devries, Donna |
| 174. | Diamond, Harold L. |
| 175. | Eichstaedt, Carl |
| 176. | Gardner, Keith |
| 177. | Goodman V, William E. |
| 178. | Hamrock, Henry P. |
| 179. | Hyland, Michael S. |
| 180. | James, Gavin L. |
| 181. | Kilcullen, Walter E. |

| Exhibit No. | Document |
|---|---|
| 182. | Lesin, Alejandro |
| 183. | Livingston, George |
| 184. | MacDonald, Audrey |
| 185. | Mass, Ronald |
| 186. | McClymonds, Alan R. |
| 187. | Nelson, James V. |
| 188. | Park, Jaehoon |
| 189. | Pedersen, Brian |
| 190. | Power, Jeffery L. |
| 191. | Ross, Robin S. |
| 192. | Ruys de Perez, Charles A. |
| 193. | Salmon, Nichole |
| 194. | Sanchez, Gloria M. |
| 195. | Smith, Davis |
| 196. | Van Raaphorst, Mike |
| 197. | Vaughn, Ryan |
| 198. | Zelouf, Michael B. |

# Family, Friends,
# & Community Members

# Exhibit 154

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

I am writing this missive in support of Ken Leech who is married to my sister Eileen. I am 62 and retired from my own consulting company (Stueck Group) specializing in designing and creating system software to drive high-speed printing systems for first class statements and documents. I was born, raised, went to college, graduate school, and worked my first jobs in Connecticut. I started my own consulting company in 1999 in the Boston area and moved myself and the company (as Stueck Group LLC) to Virginia in 2013 to support a company transfer from my life partner Peggy where we bought this house together.

My reason for writing to you is to plead for mercy for Ken, and by extension, his extended family. I was astounded that Ken has pleaded guilty to an offense. I mean "astounded" because I personally believe that Ken lives his life with a strong ethical backbone and never previously do I know of him not living up to that standard. I hope you will consider my thoughts in your process.

My first thought about Ken is from over forty years ago when he married my sister Eileen. I was a grade smart but socially awkward young adult who had recently graduated from college. There had been a wedding celebration hosted by one of his old friends which I had not attended. I remember that afterwards he had discussed delicately and carefully how I had disappointed him as he wanted me there as a new member of his family (I had thought I was just getting a courtesy invite).

Later, I got invitations first to NYC (big cities were overwhelming – but I attended) and then to the suburbs of Connecticut. He accepted that I considered him a role model, but more importantly to him, a friend. I couldn't believe that I was treated as a valued equal.

They had their daughter Catherine while in Connecticut. Again, Ken seized an opportunity for my growth by the simple act of insisting that his hesitant brother-in-law must hold the baby. My personality grew again.

Ken and my sister moved to California so I was unable to see them as much as I could when we both lived in the small state of Connecticut. Although I was originally afraid to fly, I was influenced by his warmth, generosity, and friendship to visit.

Fast forward many years later and my brother and I are gifted NY Jets playoff tickets against the NE Patriots (by this time I have moved to the Boston Area but have maintained my youthful allegiance to the NY Jets). As an aside, to this day I can't believe that is the last NYJ playoff victory, let alone season.

Once my parents sold their house in Connecticut, Ken and Eileen hosted most of our family gatherings. They ensured the whole family stayed close over the ensuing years. I believe they additionally have been a stabilizing core for friends as well. They have taken personal care of any family or friend who has needed support including being primary with Dad's dementia. They have raised two wonderful children who occasionally surprise visit their (childless) Uncle Paul. I hope that Ken can be allowed to be present in the upbringing of his two grandchildren as well.

These are all just vignettes over a period of time. I have watched and learned from Ken for all of these years. First and foremost, he is a family man and would do nothing to jeopardize that relationship. Second, I have personally witnessed Ken's ethics, inherent kindness, and intelligence to all be of the highest standard.

In the over forty years I have known him, I have never observed him doing anything remotely unethical, let alone criminal. Like my own father (Bronze Star\Korea), he is someone who I have strived by my own actions to be worthy of being not just his relation, but his respected friend. My trust and love for Ken are unequivocal. Please be lenient.

Respectfully,

Paul C Stueck 7/10/26

Paul Charles Stueck
[redacted]
Lanexa, VA [redacted]

# Exhibit 155

Karl I. Swaidan, Esq.
[redacted]
Glendale, Californi[redacted]
[redacted]

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

I am a friend of Mr. Leech as well as his and his wife Eileen's estate planning lawyer. I am a CPA and have been practicing accounting (with Price Waterhouse in downtown Los Angeles from 1983-1987) and then law (first with Morrison & Foerster from 1987-1989 and, from 1989 to the present, as a partner at the Pasadena law firm of Hahn & Hahn) since graduating from the University of Southern California. My expertise is in estate planning, tax, and nonprofit organizations.

I have known Ken for nearly 18 years. Our children attended the same high school in La Cañada, California, and we both served on the Board of Trustees for the high school. I am aware of Ken's guilty plea and understand that you are considering the sentence to impose later this year. My intention in writing this letter is to ask that you factor in the observations and experiences I relate below when contemplating an appropriate sentence.

I first met Ken when we began serving together on the Board of Trustees at our children's high school. I found him to be a soft-spoken, intelligent, and humble member of the Board. His expertise on the investment side was a skill the Board greatly valued. My own service was due to my estate planning and tax background. I liked Ken immediately and found him to be a quiet but important member of the Board, especially on the Finance Committee. He attended meetings on time and contributed when appropriate, without being overbearing or claiming to know more than others in the room. His opinions and input were always received with respect and appreciation because of his reputation and experience with his investment firm. My wife knew Eileen through their volunteer efforts at various school functions and events. Both Ken and Eileen were supporters of the school both in time and contributions.

After a few years on the Board, I was flattered that Ken and his wife wanted to retain me as their estate planning lawyer to assist with planning for their children and with navigating changing tax laws. I have assisted them over the years whenever they needed my services. Our friendship grew over time. We have shared dinners together, although ours was more of a cordial friendship than the type of close social relationship that involves extensive travel or frequent socializing.

This has generally been my practice and comfort level with clients, as I prefer to maintain an appropriate professional distance.

I have always found Ken to be respectful, humble, professional, and thoughtful. His integrity was never questioned. I never heard him disparage others or direct fault or blame toward anyone else. I was shocked when I learned of the charges brought against him and found it difficult to reconcile those allegations with the person I had come to know. Of his two children, my older daughter knew his son particularly well. They were on the swim team together, and my daughter consistently described him as a kind, funny and friendly teammate. I have always regarded that as a sign of attentive parenting, especially because my daughter has been known to be a tough judge of her fellow students.

I sincerely hope that you will be lenient in the sentence you impose on Ken for his sake and for the sake of his family, and that you will consider my experience with him as an example of his kind and generous nature.

Respectfully,

Karl I. Swaidan
[redacted]
Glendale, CA [redacted]
[redacted]

# Exhibit 156

**The Honorable Gregory H. Woods**
**United States District Judge**
**Southern District of New York**
**Daniel Moynihanan U.S Courthouse**
**500 Pearl Street**
**New York New York 10007-1312**

Dear Judge Woods,

This is David Temple.

I am aware of the charges against Ken Leech and their seriousness. I am also aware that Ken has pled guilty to a felony. I am writing this letter to request leniency for Ken.

I have known Ken Leech for 60 plus years. He was a year ahead of me in grammar school and high school. I was kind of a screw up. Ken was a top student, an athlete, and a family friend. Many nights basketball in the driveway went past midnight- Ken was a bull and very difficult to move off the block...

When I was a bit wayward, after high school, I dropped out of Syracuse University, and at a family dinner Ken talked with me and pushed me about my goals. He then suggested I consider leaving the east coast and going to college at Berkeley. I had pretty much never heard of Cal, but as I thought highly of Ken's opinion, I applied and got in. That changed my life as I had to work my butt off.

Fast forward, 10 years ago, Ken hired my son Eric at Western Asset as an entry level intern. Eric was then in the CU Boulder Leeds Business school and a very good student- But, fact is, he would not have been competitive for a job at Western Asset. Ken gave him a chance.

My son has told me that the environment at Western Asset was highly competitive, but also very supportive. Ken used to stop down once a week or so and check on Eric. Eric has gone on to a career in the non-profit world and he now works for Give Well. His company, and he, do tremendous work providing many millions of dollars a year to persons in need all over the globe, especially in Africa.

Eric has told me on many occasions that his demanding job at Western Asset gave him the confidence and skill set for his movement forward. This was all because Ken was willing to give him a chance.

I have been a prosecuting attorney (Denver DA's office, Colorado Attorney General's office ) and then many years in- house for the University of Colorado. When I was hired by Dale Tooley in 1982, the then Denver District Attorney, (he personally interviewed every applicant) he said something to me I have never forgotten-" we as prosecuting attorneys have the ability, and the responsibility, to do justice- if that means dismissing charges then that's what we do, if it means giving a defendant, who has good character a break, then that's what we should do." Forty years of lawyering later, I have always remembered his words.

My anecdotes about Ken go back forever- but what I will say, is that there is no one who I would more trust with the care of my sons, and his friendship will always be a very important part of my life.

As I said above, I understand the serious charges to which Ken has pled guilty to- these charges are not a reflection of the man I know.

Please let me know if I can offer any more information.

David Temple
[redacted]
[redacted] [redacted] [redacted]

# Exhibit 157

The Honorable Gregory H. Woods 9/2/2026
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

RE: Kenneth Leech /Sentencing

Dear Judge Woods,

Your Honor, first I'd like you know how grateful I am to be able to share what I know of Ken Leech in hopes that my insights into his character will be taken into consideration at the time of his sentencing. I have felt helplessly shackled by the frustration of not being able to do anything much for Ken and his family to help them through the last few years, while they suffered, on a daily basis, through the turmoil of anguish and fear. Writing this helps me a little with that.

I came to know Ken and his wife Eileen over forty years ago. Ken was a dear friend of my late husband, Bob, from kindergarten through high school, and for the rest of their lives, until Bob's unexpected death in October of 2024. Although there was a west coast/east coast separation between our busy families, we managed to stay in touch. Ken, along with another long-time mutual high school friend, shared the position of "best man" at our wedding (with Bruce Arnold). I believe they still are both the best of men.

Bob and I met in law school. He practiced law literally until that Sunday when I found him, thinking he was just peacefully asleep. We both graduated with a Juris Doctor of Law from Syracuse University. Bob, who always strove to be the best he could be, graduated Magna Cum Laude. He attended Stanford University as an undergraduate in classical studies, was an Eagle Scout, a black belt in Aikido, and a scholar in the study of Buddhism (I'll be donating 2,000 books on that subject in his name). He was nominated for, and completed, a two year appointment at the Court of Appeals in Albany, NY. Bob would have been a choice candidate for many a prestigious Manhattan law firm. Instead, even though we had both lived in, and loved, Manhattan, we decided to move back to his home town of Syracuse so he could work with his father in his solo practice, be closer to his parents while they aged, and so our only child could better know her grandparents. In Albany, while studying for the bar, I worked in the Department of Social Services Legal Dept., where I watched cases in family law turn over at the bench. Upon moving to Syracuse I became a Deputy County Attorney in Onondaga County. I held that position for about six years working in various departments, some involving family law. After

my father-in law's death, I took his desk over at the Temple and Temple Law Firm, becoming my husband's partner. My own practice started in the representation of children and the indigent, as well as variety of other things a solo practitioner might take on. I am presently retired. I tell you a lot about Bob partly because of his very long time friendship with Ken and also because I write some of this on his behalf. Also because I want to point out the caliber of Ken's friends and their mutual loyalty toward each other and their many other long-time friends. There is something to be said about someone who maintains and values many long-time friendships.

We continued to keep in touch, as a couple, with both Ken and his wife Eileen over the last forty years—by phone, through occasional celebratory and holiday greetings. We often included each other in our respective visits to both of our families—mine being in central California, and Ken's in Syracuse. We tried to always make a point of seeing them on our semi-yearly visits to see my family, usually spending a night or two in their company in their home. We met with them in NYC and on Long Island. We traveled with them to visit Bruce Arnold, the other of the "best men" from our wedding, to Australia, to celebrate each of their respective 60th birthdays. We also closely connected with Ken and Eileen when we, along with our children, attended another lovely and distinguished classmate's wedding in Mexico, that being Eliot Fisk, a world-renowned classical guitarist. I'm not name dropping here! I'm just trying express the caliber of the friends Ken held close. We also attended each other's daughters' weddings, of course. In February of 2025, Ken's whole immediate family—son, pregnant daughter, son-in law, and infant child—came from the west coast to Bob's memorial service in Syracuse, to offer their condolences. Ken spoke at the podium, as did the previously mentioned Bruce, who traveled from Australia, and Eliot, who came from Boston, as well as their many other mutual high school friends from many different places. These are all good and loyal people whose goodness beamed and bounced around and in between them all.

I personally know Ken to be a very soft spoken, gentle person, who was completely loyal to his family and helped a lot of his extended family a great deal. I never heard him raise his voice, or speak poorly of anyone, or heard anyone speak poorly of him. He was always kind and considerate to me and my family, as was his wife. Both gracious and kind to each other and their guests. Solid sane people. I never heard any vulgarity from either. Both were always in good humor, down to earth, modest, unpretentious, conscientious citizens who I believe were never in any kind of legal trouble, nor were neither of their well-raised, beloved two children. All in all, very decent people. He and his wife were generous to all kinds of societies. They were truly devoted to each other, their family and their community. His family sacrificed a lot because of the hours that Ken worked. He needed to wake very early on the west coast, sometimes before the crack of dawn, to adhere to the schedule of the east coast markets. This certainly put a strain

on his and his wife's social schedule, but that never seemed to cause any discord between them. They admirably worked around it. He and his wife always treated one another with deep understanding and care.

Bob would have been devastated by what has happened to Ken. He knew nothing of it. It is hard to believe, as it is so unlike his character. I'm sure I am not doing the same justice Bob could have done in describing Ken's good character. Bob respected and was proud of and valued Ken, who was fulfilling his lifelong dream of making a living in the world of finance. I always got a kick out of the fact that they spent quite a bit of their high school years playing bridge in the basement of Ken's childhood home, and referred to this as their "ill spent youth."

Your honor, please take into consideration that Ken and his family have already paid a high price with their health, hearts, reputations, and the loss of two precious years spent in angst defending themselves. Ken has been publicly humiliated. He pled guilty to a much lesser charge than he was indicted for, but has to bear the weight of the accusations of the rest of that indictment. His beloved life-long run of a career turned to dust, his private life violated, his reputation greatly compromised. With no previous criminal record, a fundamentally good man who may have made a mistake at the very end of his career, has had to watch his whole life's work crumble and be destroyed, and carry the weight of all the lives of the many people who were part of the company he was CIO of that failed over this, who lost their jobs. Ken is an honorable family man, a good citizen, who has helped many people, and worked hard all of his life on the right side of things. He is 72 years old; my husband died at age 70. Life and time become a fragile thing at this point.

I thank you for your attention to this letter, respect the weight of work you do, and hope my perspective is of help to both you and Ken.

Sincerely,

*Marisa V. Temple*

Marisa V. Temple Esq.

[redacted] Jamesville, NY [redacted] [redacted]

# Exhibit 158

September 11, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 1007-1312

Dear Judge Woods;

Kindly allow me to introduce myself to you. I am Anne Tomlinson, a friend of Kenneth Leech. I had the privilege of meeting Ken through his daughter, Catherine who was a member of the Los Angeles Children's Chorus, the premier children's choral program in LA. I had the honor of serving as the Artistic Director of the organization and, upon retirement, as the Artistic Director Emerita.

I write to share my experience of Ken with you as you decide the appropriate sentencing following his pleading guilty to obstructing an SEC proceeding. I have known Ken for over two decades through his support of the children's chorus and also through his dedication to his church. Due to their deep commitment, the Leech family received the Bel Canto Award, the highest award for Philanthropic Service to the Children's Chorus. Ken's speech that evening spoke to the power and importance of supporting the young in educational and artistic endeavor, and the beauty given to the community through the beautiful voices of the children. He brought us to tears. Additionally, Ken provides a sense of stability and is held as a treasure of our church. His thoughtful advice and counsel have inspired and held many of us within his loving care. Ken is one who wants deeply to support and encourage others. My experience of Ken as a dedicated, supportive, kind and thoughtful man in both artistic and spiritual communities is inconsistent with the acts to which he has pleaded guilty.

I ask this letter be taken in consideration in imposing a sentence. I ask that you show leniency to Ken, who I believe deserves the graciousness he has immeasurably demonstrated to others throughout his life.

With respect;

*Anne Tomlinson*

Anne Tomlinson
Artistic Director Emerita Los Angeles Children's Chorus

# Exhibit 159

July 31, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

I am writing on behalf of Ken Leech in advance of his sentencing. My name is Tyler Tucci. I am thirty-five years old, I live in Kemah, Texas, and I work in financial services. I understand that Ken has pleaded guilty to an offense, and I do not write to diminish that. I write only to share what I have seen of him personally, in the hope that it is of some use to the Court.

I met Ken's son Stephen on the first day of our professional careers in 2013, and we bonded quickly over baseball and investing. Stephen has been one of my closest friends in the twelve years since, and it is through him that I came to know his father. Part of why Stephen and I got along so well, I think, is that we recognized something familiar in each other. Our fathers both worked in financial services, but that was never what defined either household. What defined them was family — showing up, keeping your word, treating people decently whether or not anyone was watching. That is the house I was raised in, and everything I have seen of Stephen and his father tells me it is the house he was raised in too.

I have been around this industry my whole life, first as a kid and now as a professional, and I have met a great many people in it. Not all of them are good ones. I know what it looks like when someone in this business puts himself first at everyone else's expense.

Ken has never carried himself that way in my experience of him. He has welcomed me into his home in Pasadena, and he has been generous with his professional counsel every time I have asked for it. He had no particular reason to take an interest in his son's friend and nothing to gain by it. He did it anyway, and he did it consistently, over many years.

Stephen is the clearest evidence of his father I know. In twelve years I have watched him in situations where the easy thing and the right thing were not the same, and I have never once seen him choose the easy one. He is among the finest people I have had the good fortune to know, and he credits his father for a great deal of it.

What I can tell the Court is that nothing I have seen of Ken in the years I have known him resembles the matter that brings him before Your Honor. He is seventy-two years old, a husband and a father, and until this he lived those years without a mark against his name. He spent them, as best I have been able to see, contributing more to the people around him than he ever took.

I respectfully ask that the Court consider this in imposing sentence, and that it extend Ken what leniency it can.

Respectfully,

Tyler Tucci
[redacted]
Kemah, Texas [redacted]

# Exhibit 160

Gerald D. Wedell
121 Mooring Buoy
Hilton Head Island, SC 29928

July 20, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

As children of parents who grew up in the depression and fought in WWII, Ken and I were raised in similar circumstances in Syracuse, NY and Detroit, MI, respectively. Our parents' shared experiences and similar values influenced their lives and they in turn instilled in us those same values as children, namely work hard and play fair.

I met Ken in the 1970's when we worked together in the Trust Investment department at the National Bank of Detroit. He left for Wall Street a few years later, but we had become such close friends he came back to Detroit to stand up in my wedding to Mona in 1981. She and I then moved to New York in 1982 when I joined the U.S. Steel & Carnegie Pension Fund as an investment manager. We became friends with his soon-to-be wife, Eileen. They became a couple that we so loved and trusted, we asked them to be Godparents to our first-born son in 1983.

In the following decades our families have grown up and have remained close. Our children are like cousins. Their son Stephen, graced our Thanksgiving table in Connecticut when he was working in Stamford, and could not return home to California for the holiday. Our three sons all attended their daughter, Catherine's, wedding in 2018. We refer to each other as faux family.

In short, I have known Ken all of my adult life. I know him to be a good man, as a professional and friend. I understand Ken has pleaded guilty to obstruction, but in my experience that would have been out of character. Please take this as my testament in deciding his sentencing.

Respectfully,

Gerald D. Wedell

Gerald D. Wedell
[redacted]

# Exhibit 161

Ramona D. Wedell
121 Mooring Buoy
Hilton Head Island, SC 29928

July 21, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

My name is Ramona Wedell (Mona) and I have known Ken as a friend for well over 40 years. I first met Ken in the late 1970's when he moved to Detroit to begin working in the Trust Investment department of the National Bank of Detroit where my then beau, Jerry, also worked. Ken and Jerry became fast friends and the three of us spent lots of social time together over several years. The friendship was solid and would withstand the test of time and distance, when Ken relocated to New York City and our time together was limited to occasional visits.

Jerry and I were married in 1981, with Ken serving as a groomsman. We spent part of our honeymoon in New York and were feted and wonderfully celebrated by Ken and his group of friends, including Eileen, who would become his wife in 1984. Jerry and I were both honored to stand up for them at their wedding. Our love and respect for Ken and Eileen led us to choose them as Godparents to our first-born son, which they happily accepted.

Our friendship continued to flourish. We were excited when Ken and Eileen briefly moved to Darien, CT, where we resided, which made it easy to spend time with them. They eventually moved to California, but no matter the distance, our families were intertwined. We would visit them in CA, and also spend family vacations together over the years, always looking for opportunities to be together. We supported each other throughout the years celebrating births, baptisms, relocations, and weddings. We consoled each other on the death of our respective parents, illness and whatever life brought us.

I've always known Ken to be a man of good character, with integrity in his professional and personal relationships. He is honest, upstanding and trustworthy to a fault. I am aware Ken has pleaded guilty to obstructing a proceeding before the Securities and Exchange Commission, but do not find that admission consistent with Ken's character or values. It is my hope you will take into consideration Ken's positive qualities and be lenient in your sentencing decision.

Respectfully,

Ramona D. Wedell

Ramona D. Wedell
[redacted]

# Exhibit 162

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

My name is Zena Yamamoto, and I have known Ken Leech for more than 30 years. I am a middle school literature and writing teacher at St. Brendan School in Los Angeles. Ken's son, Stephen, is my son Dylan Yamamoto's best friend. I met Ken and his wife, Eileen, while our children were preschool and kindergarten students at Sierra Madre Community Nursery School. The school is a co-op, where parents are required to work, both as assistants and fundraisers. Ken and Eileen Leech were known to be generous, caring, and enthusiastic supporters of early childhood education and were particularly helpful with fundraising and planning. Our sons were reunited in school at Flintridge Preparatory School in La Canada-Flintridge, California, where they maintained their lifelong friendship. At Flintridge Prep, Ken was a vital member of the community, both with volunteering and securing funds to ensure that promising students of all socio-economic levels would be able to attend this highly regarded school. I was impressed by his commitment to the mission of the school, part of which is to ensure that students become balanced and responsible in life. Ken's children have been exemplars of this motto, following in their father's footsteps. Ken was especially kind and generous to my son Dylan upon his graduation from the University Chicago, as Ken gave Dylan his first job at Western Asset Management. It was wonderful to see that, in addition to his father and grandfathers, my son viewed Ken as a mentor, role model, and friend. He was so appreciative and thankful for Ken's guidance and the opportunity he provided.

Your honor, I understand that Ken has pleaded guilty to an offense, and I am deeply saddened to think that this loving father, husband, mentor, and pillar of the community would be in these circumstances. As someone who has admired and respected Ken for his decency, responsibility, and generosity, I am humbly writing to ask for leniency for Ken. I ask that you take into consideration his lifetime of accomplishments—as a proud grandfather and citizen—as you determine Ken's sentence. Thank you in advance for your consideration.

With deepest respect,

Zena M. Yamamoto
[redacted]
Sierra Madre, CA [redacted]

# Western Asset Management & Industry Colleagues

# Exhibit 163

September 14, 2026

The Honorable Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Judge Woods:

My name is Veronica "Ronnie" Amici. I began my career at Western Asset in 1994 as a Client Service Executive (CSE). During my time as a CSE, I was responsible for Consultant and Client relationships. In my role as a CSE for Consultants (and the eventual Head of Consultant Relationships), my responsibility was to cultivate a relationship between industry consultants and Western. This included helping consultants know and understand the multiple products and investment strategies we had available for prospects and clients. In my role as a CSE for clients, my role was to understand their investment needs and offer the best investment strategies we had to help them meet their investment goals. In order to provide these services and develop relationships, I ended up working closely with Ken over 26 years at Western. Ken and I did numerous road trips to visit both consultants and clients. Between the road trips and the preparation leading up to these presentations, I got the pleasure to know Ken not only as a team member, but as a person. I understand that Ken has pleaded guilty to obstructing an SEC proceeding and write to provide some information I hope you take into consideration.

The investment industry and the financial markets aren't necessarily complicated, but they can be very nuanced, making it necessary for you to be clear, honest and transparent in your presentations and explanations. This is particularly important when dealing with board members or investment committees that have non-finance personnel as part of their make-up. While some strategies or rationale may have been obvious to some, it required a different approach for others. Ken always had a way of speaking to both groups of people simultaneously. The key was that he was able to do so in a manner in which the conversation was inclusive and to make sure you communicated hard concepts in a simple manner. In my experience, many finance people struggle with that. Ken was quick to "read the room" and he knew just how to tailor his presentation so that it was understandable to all. He did so with kindness and sometimes, an immense amount of patience! His consideration of each individual's financial knowledge & understanding of what was being presented was paramount to our relationship with them and the future success of their investment goals.

In dealing with clients, Ken had one goal in mind - their best interest. Some senior executives, especially at the CIO level, would have generating fees as their primary objective. While generating fees and above average investment returns are a consideration, it should never be the guiding factor and that was never how Western operated. This was/is never

more true than for Ken. His main focus was that it was our job to advise and provide the proper investment strategies to best suit the client. It has always been a belief of Western that if you do right by your clients, the company will prosper. Ken didn't just share that philosophy with his team or the staff at large - he guided by example.

In an effort to provide an example of Ken doing what is best for the client, a Union Labor client in Core Plus immediately comes to mind. Their membership had grown and they were going to have a difficult time meeting their funding needs and were uncertain as to what changes needed to be made or what alternate solutions were available to them. When I alerted Ken to this, he asked me to set up a call to discuss this and to see if we could assist them. While there was no quick solution to their problem, Ken was able to offer them an option that would give them time to address their overall funding issue. In this particular instance, Ken's focus was finding a way to best help the client, and that didn't necessarily mean that Western would profit from his advice. That wasn't the end goal for Ken, rather, that was just how Ken did business.

Although I have retired from Western Asset, my 26 years of experience at the firm was nothing but positive. Ken led the investment team with integrity. Ken dealt with everyone in the same manner. I understand the severity of this case and the significance of Ken's plea. It is my hope that I have been able to convey the type of man that I know Ken Leech to be. In doing so, I hope that you will take this into consideration in providing leniency when deciding Ken's sentence. I thank you for allowing me the opportunity to share my experiences with Ken.

Sincerely,

Veronica Amici

# Exhibit 164

July 17, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

**Character Reference Letter for Mr. Kenneth Leech**

My name is Irma Ayala-Huerta, and I have been employed at Western Asset Management Company since September 1996. I was fortunate to join Western Asset when it was small enough for all employees to get to know each other personally, which is how I came to know Mr. Ken Leech.

As the GIPS Performance Management Manager, I am primarily responsible for the creation of the Firm's Composites and the annual firmwide GIPS Verification and Composite Examinations conducted by an external third-party national verifier/auditor. These Composites are created for each of Western Asset's strategies and are used for marketing purposes.

Throughout the 30 years I have worked with Mr. Ken Leech, I can attest to his utmost professionalism. He has consistently demonstrated trustworthiness, honesty, and a strong sense of responsibility. Ken Leech is an exemplary colleague who has always acted with integrity and dedication. Based on my long-standing professional relationship with him, I find that the acts to which he has pleaded guilty do not align with his prior history and character as I have known him.

In conclusion, I am pleased to have the opportunity to offer this character reference for Mr. Ken Leech. I wholeheartedly believe him to be a person of outstanding character and integrity, without reservation. I respectfully ask that this letter be taken into consideration in imposing sentence, and I request leniency on his behalf.

Respectfully,

Irma Ayala-Huerta

Irma Ayala-Huerta
[redacted] San Gabriel, CA [redacted]
[redacted]

# Exhibit 165

Joseph M. Boyle
[redacted]
Franklin Lakes, New Jersey [redacted]
[redacted]

July 18, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

**Re: United States v. Kenneth Leech — Character Reference**

Dear Judge Woods,

I am writing to provide a character reference for Ken Leech. I have known Ken for 41 years, and it is my pleasure to speak to his character and professionalism.

Ken and I first met in 1985 when we worked together at First Boston Corporation in the Treasury Bond Department. From 1990 to 2021, Ken and Western Asset Management were my client as I advanced through my career, eventually rising to Managing Director at both Credit Suisse First Boston and J.P. Morgan. Across those firms and more than three decades, I had a consistent, close working relationship with Ken that gave me an unusually long window into his integrity, work ethic, and character.

At every firm where I covered Ken, our working relationship extended well beyond standard trading hours. I would cover him during New York hours, and he would often call after the New York close, or reach out around Tokyo hours. No matter the time of day, Ken was unfailingly kind, patient, and understanding. He consistently went above and beyond in how he treated the people he worked with, and that kindness extended to everyone, not just to me.

Beyond his professional abilities, I found Ken to be a patient, doting father, a caring husband, and an excellent big brother. These qualities were not confined to his personal life — they were evident in the same warmth, patience, and generosity he brought to his professional relationships over the many years I knew him.

The charge to which Ken has pleaded guilty is completely inconsistent with the man I have known for 41 years. In all my dealings with him — as a colleague, as a client, and as a friend — I never once saw anything resembling the conduct at issue in this case. I ask the Court to consider the full measure of Ken's character, as reflected in a lifetime of kindness, integrity, and devotion to his family and colleagues, in determining an appropriate sentence.

Respectfully submitted,

Joseph M. Boyle
Former Managing Director, J.P. Morgan

# Exhibit 166

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York, 10007-1312

Dear Judge Woods.

My name is Ryan Brist and I'm writing on behalf of Ken Leech. I was a colleague and friend of Ken's. I know and understand that Ken pled guilty to a charge of obstructing a proceeding before the SEC. I worked, not only near Ken on the trading desk for over 15 years but also directly with him day-to-day on investment ideas and client portfolios. I am completely saddened by the recent past and his trial. I believe Ken's personal character; level of integrity and long-dated track record are highly inconsistent with the acts in which he pled guilty.

In my long interaction with Ken, I never witnessed an occurrence where Ken was unjust or out-of-line in communicating or handling a situation with a colleague or client of our firm. Just the opposite, Ken had a magical ability of making an interaction with him a great experience. Over the years, there were many occasions where I walked away from a Ken-led client meeting saying in my head, "I wish I could be more like him." Ken was not only a great investor, but he was also an excellent leader, and clients trusted his genuine personality. Over the years, we were in many situations together where our investment views were being severely challenged by the market. In these times, Ken was always humble and worked together with our team members in a collaborative fashion to achieve the best outcomes for our client portfolios. I never heard him once mention his accolades, but he and his team were nominated for Morningstar's prestigious award of "Fixed-Income Manager of the Year" 5 times over a 13-year period – a monumental accomplishment in our business. He won the award on 2 of those occasions, 2004 and 2014.

Judge Woods, thank you for reading. I hope you will consider my letter in your final determination.

RKBrist

Ryan K. Brist
Deputy CIO, Portfolio Manager
Western Asset Management Co.
[redacted]
Pasadena, CA [redacted]
[redacted] cell

# Exhibit 167

Vernon Hamilton Budinger
[redacted]
Ukiah, CA [redacted]

August 10, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

My name is Vernon Budinger, and I worked with Ken Leech starting in July 1999 when Western Asset Management hired me to co-lead the Risk Department. I worked at Western Asset until June 2010 and worked on the trading floor with Ken from my first day until 2008, when I was transferred to Brazil.

I learned that Ken had pleaded guilty to an offense, and I felt compelled to write this letter on his behalf. I hope you will consider this letter when making your decision regarding his sentencing.

During my first three years at Western, I met weekly with Ken and the Compliance department to review portfolio allocations, report changes to each portfolio's risk levels, and verify that the allocations met the guidelines specified in the client's portfolio documentation.

During this period, Ken provided me with essential guidance on the operational, fiduciary, and ethical requirements involved with allocating trades across multiple portfolios with various investment styles. Even though I earned an MBA in Finance from New York University and held the Chartered Financial Analyst designation, most of my portfolio risk experience had been with private hedge funds before working at Western Asset Management.

Ken was very patient and provided me with crucial guidance as I navigated the learning curve in the transition from private funds to funds regulated under the Investment Company Act of 1940.

While I am thankful for Ken's business guidance, I am eternally grateful for his help and support when I was diagnosed with [redacted]. Ken sent me health studies regarding treatments for [redacted] and helped with medical connections. These studies guided me through the contradictory and one-sided information that I received from doctors and hospitals. In addition, Ken was very supportive when Western had to reschedule a critical systems research trip because my recovery took longer than expected. Ken made sure that I had the time off that I needed to heal.

Based on this experience and the sound ethical guidance that Ken provided to me, I was very surprised to learn about the charges against him.

Judge Woods, I hope you consider my letter when deciding on Ken's sentence and decide on a lenient sentence.

Sincerely,

Vernon Hamilton Budinger
[redacted]

# Exhibit 168

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

My name is Ronaldo Carvalho, and I am writing on behalf of Ken Leech, whom I have known for more than 15 years through our professional relationship. I understand that Ken has pleaded guilty to an offense, and I respectfully offer this letter to share my personal perspective on his character and the person I have come to know over many years.

Throughout the time I have known Ken, he has always struck me as humble, down-to-earth, and easygoing. Despite his professional success and seniority, he never came across to me as flashy, self-important, or someone who tried to draw attention to himself. One memory that has stayed with me was seeing Ken and his wife having dinner at a somewhat modest Mexican restaurant across the street from a Bed Bath & Beyond store and a gas station. I happened to be there with my wife, and the moment reinforced something I had always felt about him: Ken is simply not the type of person who carries himself in a shiny or showy way. He has always seemed grounded, unassuming, and comfortable being himself.

That same quality was also evident in the way Ken approached public attention. Over the years, I was aware of many media opportunities that Ken declined. In my view, that was consistent with the person I knew: someone who preferred to keep a low profile and focus on the work rather than seek publicity or personal recognition. For someone in his position, he could have pursued a much more visible public presence, but that was never the impression I had of him. He was not flashy or self-promotional.

I also had the opportunity to observe Ken professionally over a long period of time. For roughly 10 years, I sat in on his biweekly calls with Heads of Investments from various Western Asset offices around the world. What I remember most clearly from those calls was the way Ken handled both successes and disappointments. When the input from others had a positive effect on his portfolio, Ken was quick to thank them and give them credit. When the portfolio did not perform as hoped, he did not look to blame others. Instead, he took responsibility himself. That pattern left a lasting impression on me.

To me, those moments say a great deal about the kind of individual Ken is. He was gracious when things went well, accountable when they did not, and respectful toward the people around him. My experience with Ken over many years has been that he is a decent, humble, and responsible person.

Based on the Ken I have known, the conduct to which he has pleaded guilty is inconsistent with the character I observed over many years. I respectfully ask that the Court consider the positive qualities I have described, along with the many other aspects of Ken's life and character, in imposing sentence.

Respectfully,

Ronaldo Carvalho
Pasadena, California

# Exhibit 169

GCY ASSOCIATES LLC
Est. 2006
[redacted] | NW | Washington DC | [redacted] | U.S.A.
Tel [redacted]

(Sun) 23rd August 2026

The Honorable Gregory H. Woods III
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New NY., 10007-1312
U.S.A.

REF. Letter of recommendation – ref. Mr. S. Kenneth Leech

Dear Judge Woods,

My name is Gerald Alain P. Chen-Young and I am 59 years old as of today, literally. I am currently the Chief Investment Officer of the National Public Pension Fund Association ("NPPFA"), an Adjunct Professor at Georgetown University, Chairman of the investment committee for a group of insurance companies & a Director that serves on multiple boards. Prior to this, I was VP & Chief Investment Officer of United Negro College Fund ("UNCF") from 2002-2016 and before that I worked at UBS, PaineWebber and Riggs National Bank spanning the years from 1990-2001. Schooling-wise, I hold post-graduate degrees from the Washington College of Law, University of Miami Law, York University & the London School of Economics. My undergraduate studies were done at American University. I was born in Washington DC but grew up in Jamaica (WI) after moving there on my first birthday on [redacted] I am the eldest of three (3) children from a Chinese-Jamaican father, Paul, & a Jewish-Haitian mother, Michèle, both of whom met in the graduate school of the University of Pittsburgh. I have a brother who is an economist, Michael, and a sister who is an international securities lawyer, Claudine. I am happily married and live with wife, Ana, in Washington, DC.

I have known Ken Leech since roughly 2008 from my days while working at UNCF. We worked together managing & administering a $1+ billion, dedicated fixed income portfolio that was specially created by the Bill & Melinda Gates Foundation ("Gates Foundation") in 2000 and is officially called the UNCF Gates Millennium Scholarship Program ("UNCF GMSP"). The UNCF GMSP was *initially* created to fund university scholarships for 1,000 primarily minority students, per year, for 20 years, so what was envisaged as through 2020 at the time of the original gift's devise. It is in no way hyperbole to say that, as a result of the overwhelming success managing those assets through the combined leadership of Ken Leech at Western Asset Management ("WAMCO"), the prestigious UNCF GMSP Investment Committee & the internal staff at UNCF GMSP, that that dedicated scholarship program that was approved and fully funded, beginning in 2000, was *later* formally extended under a new, separately executed contract in ca. 2004/2005.

GCY ASSOCIATES LLC
Est. 2006
[redacted] NW | Washington DC | [redacted] | U.S.A.
Tel. [redacted]

It should further be noted that after a series of detailed technical discussions, that aforementioned extension resulted in an additional approximate $250-$300 million commitment by the aforementioned Gates Foundation, should the funding need ever arise. It never did. Nevertheless it is undeniable that Ken was instrumental throughout in helping with this body of work. That additional commitment had the effect of extending the lifetime of the UNCF GMSP to run until at least 2028. Today, in 2026, and as a de facto "asset-liability matched" investment portfolio, UNCF GMSP is currently in its so-called "sunset" stage – i.e., as the GMSP assets are wound down & the final scholarship liabilities are paid out.

All of this to say that Ken Leech's role while serving as WAMCO Chief Investment Officer materially contributed to this UNCF GMSP's tremendous success. This cannot be overstated. Nor should it. I remember how "hands on" Ken was as we navigated UNCF GMSP through the frightening and tumultuous global financial crisis. More specifically, I remember being so impressed to see how Ken personally availed himself well beyond the regular call of duty to shepherd the management of those assets at a time when fixed income securities, and global bond markets more generally speaking, were under assault as markets for financial assets, everywhere, were literally collapsing. I, for one, cannot heap enough praise on especially Ken for this remarkable feat, as Ken was always mindful of the fact that these particular UNCF GMSP liabilities represented actual scholarships for university students and thus ultimately a huge part of their futures.

One last quick personal note. Working closely with Ken over the years, I got to know the character of this good and kind gentleman very well and was always moved by his (i) cool calm brilliance and (ii) gentle soft-spoken unassuming manner that eschewed limelight &/or fanfare in any form, as I recall correctly. I say so because Ken & I spent a lot of time together – mostly but not exclusively for work – in "close quarters" sharing both time & tales. It did not matter whether that meant being together in Pasadena, CA at WAMCO's HQ, in NY City, or in Washington DC.

In sum, and for these reasons, I ask you, Your Honor, to please grant Ken the kindest & most lenient terms reasonably possible in all "good faith". In doing so I would ask that you please also bear in mind that in my best personal and professional judgement S. Kenneth Leech would never, ever intentionally hurt anyone or flout any established laws, rules, regulations, etc. That is simply <u>not</u> the nature of this good and kind gentle man.

Very respectfully yours,

[signature]

Gerald Alain P. Chen-Young
Principal
Tel.: [redacted]
E-mail: [redacted]

# Exhibit 170

The Honorable Gregory H. Woods

United States District Judge Southern

District of New York

Daniel Patrick Moynihan U.S. Courthouse 500

Pearl Street

New York, New York 10007-1212

September 15, 2026

Dear Judge Woods:

I am writing on behalf of my friend and former colleague, Ken Leech. I am seventy-eight years old and have known Ken for the last forty-five years. I understand that he is before the Court for sentencing after pleading guilty to obstructing an SEC investigation, and I respectfully ask that you consider my experience with him as you evaluate his character. Based on what I know of Ken, I certainly would not have expected him to run afoul of the law.

Ken and I worked together beginning in the early 80's, when we both worked for Credit Suisse First Boston, he as a research analyst and I as a bond salesman. Ken analyzed mortgage-backed securities, portfolio strategy, and security selection for the benefit of our clients who were portfolio managers at major institutions. What stood out to me then, and still stands out to me now, was his honesty. He was always candid in his appraisal of investment strategy and individual securities, even when it would have been easier or more convenient simply to say what others wanted to hear.

I had occasion to travel throughout the Southwest with Ken, meeting with my clients as well as clients of other brokers. In those settings, Ken could easily have misled clients to try to promote whatever our firm wanted to sell. He never did that. Instead, he was an open book. He engaged clients in lively, thoughtful discussions about how best to structure their portfolios to meet their own objectives.

As a salesman, it was enormously helpful to me to have a research analyst whom my clients found so trustworthy and engaging. Ken was a great favorite of my clients for precisely that reason. As the only woman in my position at my firm, it was helpful that Ken always treated me respectfully and kindly. He would spend as much time as necessary to help me understand complicated securities. Over time, that professional relationship became a friendship, and I have known him ever since.

Today, I primarily see Ken in the contract bridge world, where he remains a favorite of many for many of the same reasons. He is engaging, straightforward, and trusted by those around him. I trust Ken never to lie or cheat. I cannot say that about everyone I have worked with over the years.

I know the Court must consider serious matters, and I do not intend to minimize them. I simply hope that my experience with Ken over many years may assist the Court in seeing the character of the man I know: honest, thoughtful, trustworthy, and respected by those who have worked with him and known him personally.  I ask that you please take this into consideration and be lenient in sentencing Ken.

Respectfully,

*Gail Conder*


Gail S. Conder

[redacted]

[redacted] Chicago,

IL [redacted]

[redacted]

# Exhibit 171

[redacted]
La Cañada Flintridge, California [redacted]

July 23, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Danial Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

I write on behalf of Ken Leech. While I understand that he has plead guilty to an offense, my hope is that sharing my understanding of his honest and intelligent character will help you in your work regarding sentencing.

I came to know Ken in 2002 when I accepted a position on the Western Asset Management trading desk as a manager of operations. My qualifications for the role included 20 years of experience in financial markets and an MBA in accounting and finance from Columbia University. In my role, I managed as many as a dozen analysts who assisted the portfolio management team by creating reports, surveilling portfolio returns, assisting with the trade workflow process and research projects initiated by portfolio managers. In addition, I focused on technology, working on trading and trade workflow software.

I was included in the Monday morning investment management team meetings which often opened with Ken speaking to market conditions and news that could impact markets. Ken had the ability to see through the noise to provide insightful risk analysis of probabilities relevant to the returns in our client's portfolios. Ken communicated a rational understanding that helped me approach our work with calm and energy.

In events that impacted operations, Ken provided context and calm. For example, during the credit crisis of 2007-2008 we worked to re-read hundreds of contracts to understand specific default language in our mortgage-backed positions and when US Treasuries were downgraded by S&P in 2011, Western Asset had to review market assumptions embedded in our trading software. Ken's support of the operations effort was always 100 percent.

My complete trust in Ken's thought process, understanding of markets, situations, probable outcomes has never been shaken. He is one of the most intelligent and least conceited people I have ever worked with. I ask you to be lenient to this person who earned by complete trust while we were colleagues.

Sincerely and respectfully,

Sara E Davis

Sara E. Davis

# Exhibit 172

Southern District of New York
Daniel Patrick Moynihan U.S Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

I am writing on behalf of Ken Leech in connection with his sentencing. Although I understand that Ken has pleaded guilty. I believe it is important for the Court to have additional background for its consideration.

Ken and I were colleagues whose paths crossed many times over the course of our careers. beginning in the early 1980s. We held similar roles as fixed income managers: Ken was based in Detroit at NBD, while I was at Northwestern Mutual in Milwaukee. I came to know him personally through his work at WAMCO, where he managed the account for the Gates Millennium Scholars Fund (GMS) administered by UNCF. I serve as Chairman of the investment committee that oversees the fund. Although I am now retired from Northwestern Mutual. I remain active on the GMS investment committee.

GMS was established in 1999 through a $1.6 billion grant from the Bill & Gates Foundation to help minority students with significant financial need attend college. Since then, it has supported more than 16,000 scholars. Ken and I have been involved with that mission from the beginning, and we both take great pride in what the program has accomplished. Ken was responsible for managing the assets. UNCF administered the program, and the investment committee provided oversight. The portfolio was managed conservatively with the goal of matching cash flows to meet students' tuition payments. The fund is now in its wind-down phase and has a sufficient surplus to meet all remaining obligations.

Throughout the decades I have worked with Ken. he has consistently been a mission-driven professional. He was highly regarded in the industry for his knowledge and skill in managing fixed income portfolios, and the investment committee relied on his expertise in overseeing GMS. We had no reason or precedent to question his integrity. Over the years. He provided quarterly updates on GMS's performance and his financial market outlook, and he remained a strong advocate for the program's mission. Ken had a critical role in the success of the program and the result that it had on the 16,000 scholars. The charge that he pleaded guilty seemed at odds with how he conducted himself or his character. Please take this letter into consideration when deciding Ken's fate.

Respectfully,

Jefferson DeAngelis

Jefferson DeAngelis

# Exhibit 173

July 20, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

My name is Donna Devries and I am 59 years old and live in Walnut, CA. I am a Trade Assistant at Western Asset Management Company and I've assisted many of the portfolio managers for more than 26 years. I am aware that Mr. Leech has pleaded guilty to an offense, but I am writing to you in his behalf, hoping to give you an idea of the type of man, Mr. Leech, has meant to me, as a person who has always been a professional, a leader as well as a kind gentleman.

During my tenure at Western Asset, there've been two people who've really stood out in my mind. One of them is a person who was our very own Company Mascot, he'd clap his hands and scream "Let's go WAMCO!" throughout the day. Then the other person is Mr. Leech, a person whom I've admired the most, our Company Hero.

To me, Mr. Leech is our Company Hero. He's always been calm, quiet, soft-spoken yet someone who'd speak with focus and conviction. Mr. Leech has lead us through all of the good and difficult times, and regardless of the situation, we were all able to celebrate Western's milestones. From the growth in AUM and from the global expansion of Western's business, to surviving the aftermath of 9/11, and moving our office from above Moose's Pub to the Paseo, our current location. No matter what challenges there were, I'd always come in every morning and find Mr. Leech at his desk.

Mr. Leech is also family man, and I remember one Christmas season, his family came to the office holiday party. His daughter stood in front of all of us, and she sang "Silent Night", solo without any background music, and she just sang beautifully. Mr. Leech had always been professional and personable, and whenever I pass by him, he would look me in the eye and ask, "Donna, how are you?" -- it was always like this.

Mr. Leech has always worked very hard throughout the years. I am asking you to please, please, please be lenient on him. Mr. Leech is a kind gentleman and no matter what the outcome is in all of this, I will always speak fondly of him with respect.

Respectfully,

Donna Devries
[redacted]

# Exhibit 174

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-13121

Dear Judge Woods,

My name is Harold L. Diamond and between October 14, 1994 and July 4, 2025 I was employed at Western Asset Management as both Director of Travel and Head of Expense Management. In these capacities, I have gotten to know Ken professionally and later as a friend. I understand that Ken has pleaded guilty to obstructing an SEC investigation and am writing to provide information in connection with Ken's upcoming sentencing.

At his core, I consider Ken to be deeply honest, reliable, respectful, calm, genuine, thoughtful, and considerate. He consistently tries to do the right thing, even in difficult circumstances.

Our families became close when our kids were both in elementary school, and our professional relationship grew into a personal one. There are three stories I like to share which crystallize personal points about Ken's character. First, a little more than 20 years ago, my son Adrian, as a 10-year-old, was cast in The Lion King on Broadway in Hollywood and received one of the starring roles as Young Simba. After his time on the show ended, he was subsequently nominated for a NAACP Image Award and Ken, his wife Eileen, daughter Catherine, and son Stephen all attended the awards ceremony. The night of the event was one of the rainiest El Niño nights I've ever seen, so much so it caused a delay in programming and the start of the show. Ken had a demanding job as Western's CIO. He usually arrived at work each day between 4:00 AM and 4:30 AM, which meant he had an early bedtime. The fact that he brought his family out to support my son on such a night, where he wouldn't get back home until close to midnight, in my view speaks volumes as to who he is at heart. In short, he's committed and dedicated to his friends and colleagues, and his word is his bond.

Second, Western employees would get together for a summer picnic involving employees and their families. One year, the picnic was held on the field at Dodger Stadium, where we would pick teams and play softball. My son and Ken's daughter Catherine were selected to sing the opening national anthem before the game, and I had the job of setting up the audio and sound equipment for the singers. Unfortunately, I got to the stadium late and, after a couple of checks, I thought the sound system was set up and signaled OK for Adrian and Catherine, who were about 11 or 12 years old, to start singing. Unfortunately, Catherine's mic went out, and in a quick, unrehearsed recovery, my son leaned over toward Catherine so that they both could share the same microphone, and they pulled it off, greeted by a massive ovation from adults and kids. I

was mortified but rather than be upset that Catherine's mic had gone out, Ken was exhilarated by the recovery with thoughts of nothing else. Needless to say, I was so struck by his pureness of heart, and this was something that stayed with me and will be with me for many years to come.

Third, a few years ago, my wife and I met a couple from New York City on vacation. Sometime later, after returning to California, I received a call from the couple advising that they would soon be visiting Los Angeles and hoped we would be able to get together during their visit. I happened to mention this to a coworker, saying that I was looking for tickets so they could experience a game at Dodger Stadium since they had never attended a baseball game there. I don't know how Ken heard about this, but he called me and asked how many tickets I needed for the game and offered me his four tickets to help me achieve my goal. He contacted me of his own volition and offered me his tickets so I could give people he had never even met a special LA experience. If being magnanimous means being noble and generous in spirit, I would have to attribute this trait to Ken as well.

Finally, over the years, Ken was an extraordinary colleague at Western. In my role as Director of Travel, my team provided travel logistical support for all Western Asset offices globally. Therefore, we handled all of Ken's business travel needs. Given his position in the firm, Ken was entitled to fly first class as many of his peers at the firm did. Nonetheless, out of respect for the bonus pool from which all staff received yearly bonuses, Ken often declined to take advantage of this perk, which saved the firm money. Naturally, he was subjected to all the forces of Murphy's Law while traveling, including bad weather of all sorts, air traffic delays, strikes, political unrest and terror alerts. This is where I most vividly observed his calm demeanor, especially when being bombarded by fierce and uncontrollable circumstances that would have caused many other individuals to lash out.

In my role as Head of Expense Management, all corporate expenses, reimbursable expenses, both travel-related and non-travel-related, were routed to me in conjunction with their direct supervisor or manager. Ken's expense reports also came to me for review and approval prior to any reimbursement. In this capacity, I was able to observe Ken's honesty and professionalism in how he spent and accounted for the firm's money. On occasion, I would reduce or deny expense reimbursements for one of Ken's subordinates who would appeal to Ken for redress. Whenever Ken always called me, he always spoke politely in a manner and tone that made it clear that I was the global subject matter expert, and that he was simply seeking greater clarification as to my ultimate decision. The words "thoughtful" and "respectful" loom large here. Ken was always conscientious that the more items that were expensed, the less money there would be for the end of the year bonus pool in which all employees shared.

The overarching take on Ken Leech that I've heard from others in the workplace is that, in the support of others, Ken has repeatedly provided mentoring and help to coworkers when they were under pressure even when he himself had a full workload. It is my understanding that

Ken has done this without complaint and with a genuine focus on getting things right for our clients whom he cares deeply about and in support of Team Wamco.

I thank you for the opportunity to submit this letter in support of my friend and colleague. I ask that you please consider it and be lenient in sentencing him.

Respectfully,

Harold L Diamond

Harold L. Diamond

[redacted]

Stevenson Ranch, [redacted]

Phone: [redacted]

# Exhibit 175

Claro Que Si

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/17/2026

Your Honor

My name is Carl Eichstaedt
I have known Ken Leech since
the day I started at Western
Asset in July 1994.

I actually sat directly next
to him for at least 15 years.
I have during that time never
Seen him act in anything but
a fair, honest, and gentlemanly
way. I have personally seen
nothing but him conduct himself
in a extremely charitable manner.
He and his reputation have
suffered enough. I do not feel any
further punishment is necessary
or proper.

Sincerely,

[signature]

RECEIVED
AUG 11 2026
GREGORY H. WOODS
U.S. DISTRICT JUDGE
S.D.N.Y.

Carl Eichstaedt

[redacted]

[redacted] Carbondale, CO [redacted]

# Exhibit 176

From the desk of

# Keith Gardner

September 10, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods

I was the Emerging Market Portfolio Manager at Western Asset from 1995 until I retired in 2016. Ken was working as a Portfolio Manager when I started at Western. We basically grew up together at Western, and I feel I knew him very well both professionally and personally. I understand that Ken has pleaded guilty to obstructing an SEC proceeding, and I am writing to provide some information on my dealings with Ken that I hope you will take into consideration.

Portfolio Managers often exchange ideas and consult with one another. As the Emerging Market Portfolio Manager, I worked closely with Ken on a weekly and sometimes daily basis. I would seek his advice and he would seek mine regularly. During these 20 plus years, I always considered Ken to be an honest and highly ethical person. There was never any suggestion during these many years and many conversations that we do anything untoward much less unethical. In all my years working closely with Ken, there is not one example I could give where honesty and integrity were not followed. Based on my knowledge of Ken's character, the acts to which he has pleaded guilty are inconsistent with my long history of working with Ken and with my knowledge of his character.

Ken was liked and respected universally by co-workers, clients and the investment community. I can't think of a single person who didn't like and respect Ken. And in my opinion, the respect everyone had for Ken was well deserved.

Thank you for reading this letter and taking my thoughts and personal experiences with Ken into consideration. I would end by sincerely asking for you to show leniency in sentencing Ken Leech.

Respectfully,

Keith Gardner

# Exhibit 177

**WILLIAM ERENEST GOODMAN V**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

July 31, 2026

Dear Judge Woods:
My name is William 'Sandy' Goodman. I worked at Western Asset for 19+ years (1995 – 2014), and reside in Manhattan Beach, CA. I first met Ken when he interviewed me in 1995, to join Western Asset as their 65th employee and first dedicated Client Service Executive. I am writing to share my personal perspective on his character and the person I have come to know.

I understand that Ken has pleaded guilty to an offense. While I do not intend to address the underlying conduct, I hope the Court will consider my firsthand observations about Ken as it determines an appropriate sentence.

During my years at Western Asset, I did hundreds of presentations with Ken, that included a great deal of travel and flights (which was never easy for him because of his fear of flying). My job of bringing in new business and retaining and growing existing client relationships was always easier because of Ken. His obvious brilliance, along with his ability to convey his market thoughts in an understandable and relatable way to any audience, combined with occasional humor too, simply made ever meeting better.

Ken was always very supportive and kind to me, and I remember in 2004, when my 18-year-old nephew, Taylor Price, had a diving accident that resulted in a [redacted] that Ken kept Taylor in his thoughts by wearing a yellow Livestrong bracelet that I gave him, with the "T" (for Taylor) colored in. Additionally, when my father-in-law was diagnosed with [redacted] in 2006, I began growing my moustache with Movember, and Ken was always very encouraging, supportive and generous!

Over the years, I have known Ken to be genuine, caring, devoted and always truthful. What has always stood out to me about Ken is his love for his family, his loyalty and leadership to Western Asset, and his care for our team and clients.

Based on my firsthand experience with him, the conduct to which Ken has pleaded guilty is inconsistent with the character I have known him to demonstrate over the years

I respectfully ask that the Court take this letter and the full context of Ken's character, relationships, and history into consideration in imposing sentence. I respectfully ask the Court to extend leniency.

Respectfully,

William E. Goodman V
[redacted]

# Exhibit 178

**July 31, 2026**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

My name is Henry Hamrock. I worked at Western Asset Management ("Western") for seventeen years, from 2007 until my retirement in 2024. During that time, I served in senior leadership roles both in Asia-as Western's Regional Head for Asia and CEO of its Singapore office-and later in Pasadena, where I led the U.S. Public Funds Team.

I am submitting this letter on behalf of Ken Leech. I recognize that he has pleaded guilty to obstructing an SEC proceeding, and I do not write to excuse his conduct. Rather, I hope my observations of him over nearly two decades may assist the Court as it considers an appropriate sentence.

I knew Ken throughout my entire tenure at Western. Our relationship began with our first meeting in the spring of 2006 and continued until my retirement in 2024. We worked together extensively, particularly during numerous business trips throughout Asia, where we met with clients and prospective investors.

Those trips gave me what I believe was a unique opportunity to observe Ken, not only in formal business settings such as client meetings and presentations, but also during the many unguarded moments that inevitably accompany travel: long flights, delayed connections, airport security lines, taxi and bus rides, restaurant meals, and countless hours spent together between meetings. In my experience, it is often during these ordinary–and sometimes stressful–moments that a person's true character is revealed.

Throughout those years, and under a wide range of circumstances, I consistently found Ken to be kind, respectful, genuine, and compassionate. He treated colleagues, clients, and everyone we encountered with courtesy and dignity, regardless of their position or status-from chief Investment officers and senior executives to junior colleagues, hotel staff, and restaurant servers. I never witnessed him behave arrogantly, dismissively, or disrespectfully toward anyone. On the contrary, he was consistently thoughtful, patient, and gracious.

Ken was also always generous with his time. He willingly mentored junior colleagues seeking career guidance and was available to share his knowledge of markets, investing, and broader organizational issues. I also saw him devote considerable time to clients who valued not only his Investment expertise, but also his thoughtful perspective on leadership and business.

One memory that has remained with me comes from our visits to Beijing, where Ken was held in exceptionally high regard by clients. Because they felt comfortable with him, they would often playfully encourage him to sample unusual local foods or drinks simply to see his reaction. He accepted these good-natured challenges with patience, humor, and grace, never displaying irritation or a sense of superiority. Moments like these, while seemingly small, reflected the genuine humility and good nature that I observed over many years.

Within Western, I also witnessed Ken step forward on several occasions to support colleagues whose job roles were at risk or Investment positions under scrutiny. He did so not for personal gain, but because he believed it was the right thing to do.

I recognize that the Court's sentencing decision must take into account many factors, including the seriousness of the offense. My purpose is not to diminish those considerations, but simply to offer my honest observations of the person I came to know over nearly two decades. Based on my firsthand experience, I believe Ken possesses qualities of character that are genuine and that support his capacity for rehabilitation and making positive contributions to others in the future.

I respectfully ask that you exercise leniency in sentencing Ken. Thank you for your consideration.

Respectfully,

Henry P. Hamrock

Henry P. Hamrock
[redacted]
Palm Beach, FL [redacted]

[redacted]

# Exhibit 179

July 21, 2026

The Honorable Gregory H. Woods
United States District Judge
Sourther District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

My name is Michael Hyland, and I reside in Larchmont, New York. In advance of his sentencing, I am writing in support of my longtime-friend and former colleague, Kenneth Leech. Ken has been a client, colleague and a friend for fifty years, and he joined me at First Boston in 1980. At that time, I was the head of the Fixed Income Research Department and a Managing Director of the firm. I am aware that Ken is currently awaiting sentencing for his offense, and I am hopeful that my long-term relationship with Ken and knowledge of his character may assist you as you consider his sentence.

Following his role managing fixed income portfolios, Ken used his broad knowledge of corporate, mortgage-backed and treasury markets to start a Relative Value Analysis group and build out our Fixed Income Research efforts during the early 1980s. Ken was a considerate and sensitive manager of his team. He always taught his team well and their knowledge of the markets grew under his tutelage.

After leaving First Boston, Ken built Western Asset from a small manager to a multi-billion dollar enterprise. His reputation and the culture of the firm was highly regarded by many managers and analysts, who yearned to join Ken's team. Several former members of my research group reinforced that to me.

Ken and I have remained friends all these years; my wife and I attended their New York City wedding, and our wives and children have warm relationships. Ken has always provided interest and guidance in the careers of our five children. His family is as close as any can be; Ken and Eileen were overjoyed to welcome their first grandchild several years ago, more recently, their second grandchild. We often talked about guiding our children as they grew up – he has been consistently committed to his family and he has a strong sense of values.

Based on my fifty-year relationship with Ken, his character is not consistent with the offense to which he has plead guilty. I hope this helps you in your evaluation of Kenneth Leech, and that you may consider mercy and leniency in his sentencing.

Sincerely,

Michael S. Hyland

# Exhibit 180

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods

My name is Gavin James. I was a colleague of Ken Leech at Western Asset for nearly twenty years. I was Head of the Western Asset London Office and then transferred to Pasadena to be of Head of Global Client Service and Marketing before retiring as Head of Global Portfolio Operations.

I realize that Ken has pleaded guilty to the crime of obstructing a proceeding before the SEC and that sentencing will be in October of this year. With that said, please allow me to give you some background on what Ken did for me both personally and professionally during my time at Western Asset.

To begin with Ken was instrumental in hiring me from JPMorgan to run WA in London. His views on the convergence of European currency and interest rates before 1999 perfectly aligned with mine. Our professional and personal relationship grew successfully overtime to a point where the decision was made to move me and my family to Pasadena in 2002 to run Global Head of Client Service and Marketing.

Ken was always open to discussing client needs and requirements often giving up personal time to meet clients outside the office. Clients and prospective clients really listened to his opinion's which were often different to the mainstream.

On a personal note Ken and his wife Ilene went out of their way on many fronts to ensure my family settled quickly in Pasadena after moving from London. A good example of this was Ken writing a reference for my daughters to gain entry to Westridge School in Pasadena. Gaining admission to Westridge School which at the time was extremely difficult and I'm convinced his influence definitely helped. To this day Ken and his family are very well respected in the Pasadena community.

Judge Woods I really appreciate that you are busy so I thank you in advance for reading my letter to you and hope you gauge the fact that Ken has been a very influential person during my career and in the lives of my family in Pasadena. He will always be someone whose opinion and direction I would seek.

Yours Faithfully

Gavin L. James

# Exhibit 181

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 1007-1312

Dear Judge Woods:

My name is Walter Kilcullen, I am a friend and former colleague of Ken Leech going back to 2002 when Western Asset brought me on as a twenty-six-year-old High Yield bond trader, a pioneer hire for the Firm at the time. Having interviewed directly with Ken and other senior members, the opportunity to relocate from the East Coast and join a rising fixed-income juggernaut with $91 billion in assets under management and climbing rapidly, was clearly the right strategic move for my career. Under Ken's leadership as Chief Investment Officer, the move from my home state of New Jersey to Southern California would change my life forever for the better…in retrospect, it was the enduring relationship fostered that compels me to pen this letter to attest to Ken's outstanding character and unwavering professionalism; consistently adhering to the highest ethical standards. I am writing to Your Honor today to highlight the mutual respect and candor Ken Leech shared with his team - and specifically with me - throughout the 22 years we spent managing client capital together on the trading desk at 385 E. Colorado Boulevard in Pasadena. I deeply hope and pray that his exemplary character is taken into consideration during his sentencing.

I have always known Ken to be a deeply kind, gracious, and humble individual. Having navigated numerous volatile market cycles alongside him, I witnessed firsthand his ability to maintain complete composure under pressure, operating with the utmost fidelity to our client base. His impeccable reputation both internally and externally was one that was earned through decades of maintaining a commitment to excellence in delivering the best risk-adjusted returns while at the same time never losing sight that leading from the top, by example, was paramount in mentoring the team into successful, seasoned investors and stalwarts of capital.

In closing, these past two years since the allegations emerged have been extremely difficult for Ken, his family, his friends, and his former colleagues at Western Asset - a firm he unequivocally helped build on merit and a steadfast commitment to doing the right thing. He led, and we followed. Knowing Ken Leech as I do, I have remained certain from day one that the conduct central to this matter is entirely inconsistent with his decades-long operating history and true character. I hope this letter provides Your Honor with valuable insight into the caliber of a human being I have known for the past 24 years, from my early days as a young trader to the present.

Respectfully,

Walter E. Kilcullen

Walter E. Kilcullen
Head of High Yield
Western Asset Management
[redacted]

# Exhibit 182

July 29, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

I worked at WA for 16½ years. It was my first job after graduating from college in 1992.

I began my career managing the graphics team within the marketing department. Over the years, I transitioned into sales and eventually became Head of U.S. Marketing.

For most of my time at Western Asset, I worked under Jim Hirschmann, from his years as Head of Marketing through his tenure as CEO. During that period, the company grew from approximately 30 employees in Pasadena managing about $7 billion in assets to more than 300 employees with offices around the world and over $500 billion under management.

I had the opportunity to work closely with Kenny throughout most of my career. Early on, I prepared investment and marketing materials for prospective and existing clients. Later, I traveled with him to meet with investors and prospects.

Outside of work-related events, Kenny and I did not socialize much. We had different personal interests. I have always been passionate about sports and the outdoors. In fact, the desire to live a more outdoor-oriented lifestyle was the primary reason I left Western after so many rewarding years.

My lasting impression of Kenny is that investing was never simply a career for him—it was his genuine passion. He loved understanding how the world worked and collaborating with his team to develop thoughtful investment strategies. I always felt that he came to work because he truly enjoyed the intellectual challenge, not because it was simply his profession.

After leaving Western, I visited the office several times. During one visit, Kenny asked how I was doing. I told him that life was great and that I was spending much of my time outdoors. I then asked whether he was thinking about retiring.

His response has stayed with me. He said he was doing exactly what he loved. He had an outstanding investment team, access to every research tool he could want, and the opportunity to study the markets every day. He felt fortunate to be doing work that he genuinely enjoyed.

Kenny never enjoyed the public side of leadership. He disliked traveling, preferred being at home or in the office, and was not interested in publicity or speaking with the press. He avoided the spotlight whenever possible and consistently emphasized the strength of the team and the firm's culture rather than his own accomplishments.

During client meetings, he was at his best when thoughtful investment questions were asked. Those discussions energized him, and it was clear how deeply he understood his craft.

I remember Kenny as an exceptional leader who led by example. He was consistently humble, kind, thoughtful, and remarkably understated. He earned respect through his character and expertise rather than through charisma or self-promotion.

Over the years, I met many investment managers, and Kenny always stood out to me as a true master of his profession. That was a view shared by many members of the investment and trading teams who worked alongside him.

Your Honor, I respectfully ask that you see Kenny as I have known him: a good man who has been deeply committed to his family, his company, his colleagues, and his community. While no person is defined by a single moment, my experience over more than sixteen years is of someone who consistently demonstrated integrity, humility, dedication, and genuine care for the people around him.

Thank you for considering my perspective.

Respectfully,

Alejandro Lesin

# Exhibit 183

George A. Livingston
[redacted]
Corona Del Mar, CA [redacted]
[redacted]

**8/12/26**

Judge Woods
US District Judge
Southern District NY
Daniel Patrick Moynihan Courthouse
500 Pearl Street, NY, NY 10007-1312

**Dear Judge Woods:**

I am writing to you on behalf of Kenneth Leech who I am aware has pled guilty to an offense and will be sentenced in the near future. I am hoping to provide some information regarding my personal and business interactions with Ken that you may consider in the sentencing decision. I am currently a retired financial industry executive having spent over thirty years working at both JPMorgan Chase and Bank of America Merrill Lynch within global markets. My relationship with Ken has been primarily professional through his role as CIO, and previously as a portfolio manager at Western Asset Management Co. During these years of professional interactions, I developed a relationship with ken based on respect and trust.

Based on my own experiences with Ken, the acts which he has pled guilty to seem extremely inconsistent with his character and reputation. For me and the colleagues that I worked with, it was always a pleasure to conduct business with Ken as you could always expect honesty and transparency from him at every turn. Not only was Ken regarded by everyone that knew hm within the financial industry as incredibly smart, he was equally thought of as having very high ethical standards. In my experience, Ken promoted transparency in discussing the details of business transactions or agreements, and he consistently cared that terms were fair for all parties involved. I have also had the privilege of seeing Ken manage and interact with the teams of employees under his leadership. I saw a

leader who was consistently patient and supportive of his employees as Ken seemed always willing to share wins or glory within his firm or the industry as a whole.

In my many years of interactions with Western Asset Management Co, I never heard one of Ken's colleagues or employees speak negatively about him. Ken was viewed as accessible and available to (junior or senior) employees of his firm throughout his career as he seemingly showed no signs of ego in his leadership role. As I am sure you are aware, there are numerous examples of Chief Investment Officers within the financial industry with large egos that chase the limelight. This was not Ken, and his modesty is well known. I believe he has always been more comfortable chatting and sharing his market knowledge with young or junior employees than rubbing elbows with corporate CEOs, or appearing on TV

I hope you may consider this letter with my opinions and experiences regarding Ken Leech's character attributes in your sentencing decision.

**Sincerely,**

**George Livingston**

# Exhibit 184

July 12, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl St.
New York, NY 10007-1312

Dear Judge Woods:

I am writing in support of Ken Leech who has pleaded guilty to obstructing a proceeding before the Securities and Exchange Commission.

I met Ken in 1980 when I started working at the First Boston Corporation. Ken and I sat in a block of six desks on the Fixed Income Trading Floor. There were three desks adjacent to each other and another three directly facing them. Due to this configuration, there was no privacy and you got to know your "desk mates" quite well. With the wrong people, this could have been miserable, but we had a great group and Ken was part of it. He made coming to work fun...usually joking about my life "on the farm" because I commuted from CT. Our jobs were different so we didn't really work together much, but I sat across from him so watched him and listened to him do his job. I considered him a friend and he came to my wedding years later.

Ken was a highly respected member of the Fixed Income Research Dept. who sat on the trading floor so he could be immediately available to the sales and trading staff. Ken was very smart but he wasn't full of himself. He didn't have an attitude. He was just a fun, simple guy who knew his stuff and everyone liked him.

Ken and I lost touch after he left FBC in 1988, but thinking about him brings a smile to my face. When I read what is going on in his life right now I have to admit I'm in shock. They can't be talking about Ken. In my years at First Boston I worked with a lot of people, many who thought they were Masters of the

Universe. If this was about one of them I would not have been surprised, but not Ken. Ken was as down to earth as you could get. He is what you'd call "one of the good guys" and, as I said, was well respected by all. Do people change? I suppose it's possible, but I believe "zebras can't change their stripes".

I thank you for taking my letter into consideration as you make your decision re: Ken's sentence. In my heart, Ken will always be one of the good ones. Please be lenient with him.

Respectfully,

Audrey MacDonald

[redacted]

# Exhibit 185

August 30, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

My name is Ronald Mass. I am an investment manager in Los Angeles and have spent most of my career in the asset management industry. I am writing about Ken Leech, whom I worked alongside for more than twenty years and came to know well.

I understand that Ken has pleaded guilty to an offense. I do not write to revisit that or to minimize it in any way. I write only in the hope of giving you some sense of the person I worked with and observed closely over two decades, in the event that it is useful to you in deciding how to sentence him.

I worked with Ken at Western Asset Management from January 1991 until June 2012. I was a portfolio manager and head of structured products investments, covering asset-backed and mortgage-backed securities. For most of this time, I reported directly to him while he served as the firm's Chief Investment Officer. My work put me in regular contact with Ken — in investment strategy meetings, in reviews of the portfolios I managed, and in the ordinary daily business of running money for clients — over a span of more than twenty years. Since 2012 I have stayed in touch with Ken and observed the same qualities I saw in Ken when I worked with him at Western.

In all of that time, I always considered Ken an excellent role model, someone who acted with the highest integrity. One of the things I remember most clearly about working for him is how consistently he returned to a single point: that our obligation was to act in the best interests of Western Asset's clients. He said it in meetings, he applied it to specific decisions in front of us, and he expected the people who worked for him to weigh decisions the same way. It was not a slogan at the firm; it was the standard he held us to, and he held himself to it as well.

Ken was also, and remains, a remarkably modest and humble person given his talent, his accomplishments and his success. He was approachable to everyone at the firm and was always happy to stop and talk — about investments in general, the fixed income markets, history, or sports. For someone in his position, that openness was unusual, and it mattered a great deal to the people who worked under him.

He made a point of leading by example rather than by instruction. He was almost always the first person in the office in the morning and frequently the last to leave at night. It was how he tried to set the tone for everyone at the firm, and over the years it did exactly that. He is also a brilliant and innovative investor, and I learned a great deal from him about the markets over the course of my career. Working with Ken over the years and observing his actions and leadership has helped me become a better investor and leader.

Based on what I know of Ken's character from more than twenty years of working closely with him, the conduct to which he has pleaded guilty is inconsistent with the person I knew and with the way he conducted himself throughout the years we worked together.

I respectfully ask that you take this letter into consideration in imposing sentence, and that you be lenient with Ken. Thank you for your time and for considering my views.

Respectfully,

Ronald Mass
[redacted]
Pacific Palisades, CA [redacted]

# Exhibit 186

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

I am writing to you on behalf of Ken Leech, who I have known for over 40 years as a mentor and close friend. I understand that Ken has plead guilty to obstructing an investigation and I want to offer insight into Ken's character in hopes that you may exercise leniency in imposing his sentence. I am a retired former bond investor and trading manager. My last position was Sr. Managing Director in charge of U.S. Rates Trading at UBS in Stamford, Ct. . I live with my wife of 35 years in New Canaan, Ct. and we have 2 grown daughters.

I initially met Ken in 1983 when I started my first job out of college as a financial analyst in the Proprietary Bond Trading Department at The First Boston Corp. in New York City. Ken was the Senior trader for the department and became my mentor and a close friend. Ken left First Boston Corp. in the late 80's and later became Chief Investment Officer of Western Asset in Pasadena, Ca. Through Ken's investment success, Western grew from a small pension fund manager to one of the largest bond managers in the country. I reunited with Ken when I went to work at Western Asset as a portfolio manager reporting to Ken in 1999. It is not an exaggeration to say that besides my parents Ken has had the most influence in my life. Ken was a tough critic when I needed it, but he was always fair. Ken is thoughtful, non-judgmental and empathetic. Some of my favorite times at Western Asset were the quiet afternoons on the trading desk when Ken and I would debate a variety of issues. No matter how knowledgeable I thought I was on any particular subject, I doubt I ever won a debate with him. He is extremely well read on an astonishing wide range of topics. I learn something or gain a new perspective every time we have a conversation. Ken is generous with his time and inclusive with the people in his life. He is a loyal friend. Over the years, I have met many of Ken's friends and vary from high school, buddies, college professors, industry leaders and various people from all parts of Ken's life. The common thread is that we all feel fortunate to call ourselves Ken's friend. It is a privilege to help Ken in any way, as he has always been there to support me.

Ken is a devoted husband and father. I have known his daughter, Catherine, and son, Stephen, their entire lives. They exhibit the same fine qualities of Ken,

successful, thoughtful and modest. Thank you for your consideration of my request.

Respectfully,

Alan R. McClymonds

# Exhibit 187

The Honorable Gregory H Woods

United States District Judge

Southern District of New York

Daniel Patrick Moynihan U.S. Courthouse

500 Pearl Street

New York, New York 10007-1312

Dear Judge Woods:

My name is James Nelson. This letter is necessarily long, as I have some difficulty distilling a 44+ year professional and personal relationship with Ken to a single page. It's also difficult to separate the story of Western Asset from the Ken Leech story, as they are mightily intertwined.

I will start with a bit about myself. I'm 75 years old and retired from Western Asset in 2006, after 15 years as head of corporate research and portfolio manager of corporate-only portfolios and synthetic corporate-only portfolios. I live in Pasadena, a stone's throw or three away from Ken's house. I have a BA/JD/MBA, and started work with Standard & Poor's Corp. in 1979. This was training to deal with corporate credit ratings. In 1982, I joined the First Boston Corporation in their Fixed Income Research Dept, and this is where I first met a skinny youngster named Ken Leech, who like myself was a native Central New Yorker. He went to Jamesville-Dewitt high school, and I went to sometime-rival New Hartford. He was the first person I'd met who got through Wharton with both a BA and an MBA in 4 years with a 4.0 GPA. Ken was dealing more with the Treasury bond market, and I was dealing more with corporate research, largely relating to credit trends for different industries and companies within those industries. Our group in fixed income research was very close. Our paths diverged when I left First Boston for Kidder, Peabody and Co. to be the head of Industrial corporate fixed income research in 1986.

In 1991, I was recruited by a firm named Western Asset Company to be the head of the corporate department. In 1991, Western had 35 employees and about $5.5 billion under management. A key part of the recruitment process was working with old friend Ken, who pointed out that I'd never have to shovel snow again. Not unimportant, in my view.

For the following 15 years, I ran the corporate research department, which was on the prowl for things that were improving while avoiding things that were deteriorating. I sat on the Strategy Committee, which met regularly ( and when circumstances dictated that we needed to consider a change ) to discuss the same things every fixed income manager makes. These

are the yield curve decision, the interest rate forecast, sector allocation, companies within the corporate sector, and currencies. All of our decisions were subject to various account constraints but largely based on whatever benchmark each client chose. Clients with similar mandates had very similar performance over 1, 3, 5, and 10-year periods. Our goal was consistency, trust, and integrity. We grew quickly, driven by our performance, new accounts, and new assignments from existing accounts.

In October 1993, the Eaton fire drove my wife and I from our home; we fled to Ken's in Sierra Madre, and as the fire continued to march eastward Ken and I (and our families) decamped to Ed Moody's (who also ran core portfolios at Western ) in Monrovia, where a packed house tried to get some sleep. I've met Ken's mother and brother on a number of occasions, and he and his wife and kids were quite familiar with my parents when they were alive. I've known Ken's children (and grandchildren) since birth, and he with his wife Eileen grew with ours as well. We've been to quite a large number of events—birthday parties, holidays, sporting events, parades and weddings together, and have a close relationship not only with Ken, but his wife and children as well.

In the mid 1990's, Ken was elevated to Chief Investment Officer. We continued to add assets, and in the late 1990's passed the $100 billion mark, and then $250 billion. I reported to Ken, I have to say I thought he was the most fair person I'd ever met in the business. Reporting to Ken was that extremely rare occurrence where your boss was also a great friend. Not every person you meet in the securities industry, regardless of whether you are on the sell side or the buy side, always has your best interests at heart. Not so with Ken—the nature of Western was despite our growth, it was largely a question of scaling the business with the same number of employees. Growth was largely on the client service and marketing side of the business. During that time the investment team stayed largely the same size, and trust in the key roles of the fixed income portfolio management specialties was, and had to be, high. Ken set a high bar for integrity, and we all strived to meet that key part of the business. He was and is a true role model. There was a massive amount of collaboration, as we had to not only understand our own specialty, but appreciate the intricacies of other disciplines and how they could contribute to outperformance. Not only was Ken a great leader, he has the unique ability to distill many disparate inputs into a cogent and successful strategy.

At the end of the day, I realize Ken has pled guilty to an offense. As an attorney myself, I have very strong opinions on the how the last two years have unfolded. I realize those thoughts are best kept to myself. I would leave you with this: if my wife and I got hit by a bus tomorrow and our kids were still minors, would I trust Ken to make sure they were in good hands ? I absolutely would. I hope that Ken's strong ongoing commitment to improving the lives of others reflects positively as you consider your judgement.

Best Regards

James V. Nelson, Esq

[redacted]

Pasadena, CA [redacted]

[redacted]

# Exhibit 188

September 17, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

My name is Jaehoon (Jae) Park. I am 71 years old and I was with IBM for 22 years where in my last position, I was the Director of Fixed Income for the IBM Retirement Fund where I managed outside managers managing the Pension Fund fixed income assets. Ken Leech, as the CIO of Western Asset, was given the largest allocation based on my personal confidence in his high integrity, high ethical and fiduciary standards. In addition, I enjoyed our very close collaboration in managing the assets for eight years from 1994 to 2002. Ken was always very straightforward with me about the firm's performance.

In addition to our weekly, often daily conversations, I traveled to California from Connecticut, several times a year to meet with Ken, and on one occasion our wives joined us. The primary focus of our relationship was professional, with very detailed interaction regarding numerous investment mandates. It is during those years that I gained my personal insight into Ken Leech. I believe there is no one I would trust more highly than Ken when it comes to doing the very best for all of his clients, without exception. As a result, while I am aware that Ken has pleaded guilty to obstructing a SEC investigation, this conduct is inconsistent with my understanding of Ken's nature and being.

In 2002, I was recruited by a respected investment firm, Loomis Sayles and Co. to take on the same position, as Ken Leech had for Western Asset. I became the chief investment officer for fixed income. After much success in fixed income, I became the overall Chief Investment Officer, heading up both equities and fixed income. I successfully grew the assets from 50 billion dollars to over 300 billion during my 19 years at Loomis Sayles. I remained in touch with Ken during those years at Loomis Sayles and Co. on my trips to the West Coast, attending conferences or visiting clients, I would make it a point to visit Ken or he would come to see me with Jim Hirschmann, the CEO.

I respectfully ask that you please take my highest regard and my caring for Ken into consideration.

Sincerely,

Jae Park

Jaehoon Park

# Exhibit 189

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

My name is Brian Pedersen. I am 80 years old, retired, and live in Belmont, California. I spent the majority of my career in institutional sales at Goldman Sachs from 1986 through 2012. During much of that time, from approximately 1989 until my retirement, Ken Leech was one of my clients while he was with Western Asset Management in Pasadena, California. Over those years, our professional relationship grew into a close personal friendship, and I am writing on his behalf because I believe it is important that you know the man I have known for decades.

I understand that Mr. Leech has pleaded guilty to an offense. While I fully acknowledge that fact, I felt compelled to write because of the profound impact Ken has had on my life, both professionally and personally. I hope that by sharing my firsthand experiences, I can provide some additional perspective on his character as you consider his sentence.

Ken distinguished himself throughout his career through intelligence, professionalism, and an unwavering commitment to long term relationships. He built an exceptional reputation in the bond market, even serving on the US Treasury Borrowing Committee, a role for which Goldman Sachs nominated him because of the respect he had earned across the industry. In my experience, however, what made Ken truly exceptional was not simply his professional success. It was the way he treated people.

In an industry where disagreements between brokers and clients can become contentious, Ken consistently approached every situation with fairness and balance. He always sought solutions that preserved trust and respected the relationship rather than focusing on short term advantage. He understood that integrity and mutual respect were the foundation of lasting partnerships, and he lived those values every day.

Our relationship extended well beyond business. Ken became a close friend who welcomed me into his life and family. We played golf together, I visited him in Pasadena, and I always looked forward to the Rose Bowl gatherings he hosted. One of my favorite memories is attending a baseball game with Ken, his son, my daughter, and me. My daughter still remembers how much fun we all had together. Ken also gave a heartfelt

speech at my retirement celebration, reflecting on how our relationship had long since evolved beyond that of client and salesperson.

One thing that always stood out to me was how proudly Ken spoke about his family. Whether we were together on the golf course, catching up in Pasadena, or talking between meetings, he would often share updates about his wife, his son, and his daughter. It was obvious how much they meant to him, and I always enjoyed hearing about what they were doing. His daughter's accomplishments as a pianist, in particular, were something he spoke about with great pride.

Ken also had a remarkable gift for building genuine relationships. Whenever he came to New York to visit clients and brokers, he always made time for as many people as possible. He was someone everyone wanted to have dinner with because he was warm, engaging, and sincerely interested in others. Throughout my career, I watched him cultivate long-term friendships with brokers, colleagues, and business partners alike. He never treated relationships as transactional. He invested in people, and those relationships lasted because they mattered to him.

Based on everything I have known about Ken over nearly a quarter century, the conduct to which he has pleaded guilty is entirely inconsistent with the person I have known. The Ken I know is thoughtful, honest, generous, and deeply committed to the people around him. Those qualities were evident throughout our decades of friendship and are the reason I continue to hold him in such high regard.

I respectfully ask that you consider Ken's lifelong character, the many positive contributions he has made to those around him, and the decades during which he consistently demonstrated integrity, compassion, and genuine care for others. I also respectfully ask that you extend leniency as you determine an appropriate sentence.

Thank you for taking the time to consider my perspective.

Respectfully,
Brian Pedersen

# Exhibit 190

Jeffery L. Power
[redacted]
Reno, NV [redacted]

8/31/26

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

I am writing to you on behalf of Kenneth Leech to provide my personal and professional interactions with him that I hope you will consider in making your sentencing decision. I am currently the Chief Investment Officer and Head of Braeburn Capital, a wholly owned subsidiary of Apple Inc. We have been and still are a client of Western Asset Management for the past 13 years. Ken was directly responsible for our account portfolio management, so I have had a lot of interaction with him directly as well as the firm. During these years of interactions, I developed a relationship with Ken based on respect, integrity, and trust.

Based on my experiences with Ken, the acts in which he has pled guilty seem extremely inconsistent with his character and reputation. Over the years I worked with him, he always conducted himself with honesty and transparency. In addition, I have had a lot of interactions with his collogues and other investment professionals, everyone thought highly of him and deeply respected him. In fact, I have never heard a bad word uttered about him from these individuals.

I hope you may consider this letter with my opinions and experiences regarding Ken Leech's character attributes in your sentencing decision.

Sincerely,

Jeffery L. Power

# Exhibit 191

July 21, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

My name is Robin Ross, and I am an executive and leadership coach based in Chicago with over 30 years of experience in the financial industry and more than a decade coaching leaders and teams. From 2005 through 2011, I served as Managing Director of CME Group, where I led a global team through the disruption and changes caused by the automation of the markets and the financial crisis. I am writing today to share my experience and perspective on Ken Leech's character, in the hope that you will take it into account when weighing the appropriate sentence for him.

Like Ken, I started my career in the early days of the financial futures markets at a regional bank, where we used futures to hedge our interest rate risk. In 1982, I moved to Chicago and became an interest rate futures broker on the Chicago Mercantile Exchange, until 2005, when I was hired as Managing Director of Interest Rate Derivatives Products & Services for the Exchange. It was in this capacity that I had the privilege and opportunity to get to know Ken professionally.

Ken was a valued client and an active user of CME Group's Treasury and Eurodollar futures and options contracts. In the early 2000s, there was intense pressure to transition the U.S. futures markets from "open outcry" to electronic trading. Although many of today's market participants take the liquidity and ease of execution for granted, building the liquidity and functionality necessary to handle the large orders that institutional fixed-income managers like Ken needed was complex and often fraught with execution error risk. One of my top priorities was to build relationships with Ken and other fixed-income asset managers to better understand and address their concerns. This was a new approach for CME, as historically there were no direct relationships with asset managers, only with their Wall Street brokers and clearing firms. Many CIOs did not have the time of day for us, but not Ken. In all of my interactions, I found Ken to be gracious, generous, honest, and humble — all rare traits in this business. Although often the smartest person in the room, Ken never made my team or me feel "less than," and he was always willing to share his time and

wisdom on what was best for Western Asset and their clients. Ken was never afraid to let us know when we made changes that he disagreed with, always delivering the message in a direct but respectful manner. This ethos extended to the team of portfolio traders that he hired and the culture he instilled. With Ken's encouragement, all were willing to provide helpful and honest feedback that helped my team and me improve our contracts and trading functionality. In short, the acts that Ken has pleaded guilty to do not align with the Ken that I came to know and respect.

I was also lucky to get to know Ken on a more personal level, through my husband, Norman Quinn. Ken was not only Norman's client for over 40 years but also a good friend to him, providing a friendly ear and encouragement when Norman's wife left him and he found himself raising two teenagers on his own. I have fond memories of our annual visits to Pasadena, where Norman and I would have dinner with Ken and Eileen, sometimes joined by our adult children. During the pandemic, he invited us, along with our daughter and her baby, to his house to spend time with him and his family. During these interactions, I witnessed a truly caring husband, father, and friend, who treated everyone with respect and kindness.

I recognize that Ken has pleaded guilty and that it is not my place to speak to the legal issues before the Court. I write only to offer the perspective of someone who has known him both professionally and personally for many years, and who has seen him consistently act with honesty, humility, and genuine care for the people around him. The man I have described in this letter is the Ken I have known for decades, and I do not believe these charges define the whole of who he is.

I respectfully ask that Your Honor take this letter, and the character it describes, into consideration when imposing sentence. Thank you for your time and for the careful consideration I know you will give this matter.

Respectfully,

Robin S. Ross

Robin S. Ross
[redacted]
Ponte Vedra Beach, FL [redacted]
[redacted]

# Exhibit 192

July 20, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Ken Leech

Dear Judge Woods:

I am writing in connection with your consideration of sentencing Ken Leech later this year. I am the retired General Counsel and head of Legal and Compliance for Western Asset Management Company, a position I held from 2007 to 2022 when I retired. I understand that Ken has pleaded guilty to the crime of obstructing a proceeding before the Securities and Exchange Commission. I am not writing to challenge or question any aspect of the plea or the related proceeding but to provide some information for your consideration in sentencing Ken.

Over the fifteen years I was at Western Asset I worked with Ken on numerous legal, regulatory and compliance issues. These issues included addressing issues under client investment guidelines, correcting trade errors, client and performance reporting and the development of new investment products or funds. In addition to investment issues, we also faced issues that every business has such as employment and HR issues especially in Ken's role as head of the investment team. In my experience Ken was always cooperative and appropriately sensitive to legal and compliance considerations and supportive of the Legal and Compliance functions at Western Asset. That is not to say that from time to time there were never questions, challenges and even disagreements over issues and their resolution but they were handled in a professional and appropriate manner.

In sum, my experience working with Ken is that he was a person of integrity, duly sensitive to legal and compliance issues faced by Western Asset.

Respectfully,

Charles A. Ruys de Perez
[redacted]
Pasadena, CA. [redacted]

# Exhibit 193

July 20, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

My name is Nichole Salmon, and I have worked at Western Asset for 19 years. I began as a receptionist and eventually served as Ken's Executive Assistant for the past nine years. When I interviewed with Ken for this position, I was admittedly intimidated because of who he was. I had never worked for someone at his level before. Once I started supporting him, however, those concerns quickly disappeared. As I learned the role and occasionally made mistakes, he was consistently kind, patient, and understanding. Working closely with him every day gave me a unique perspective on how he treated everyone in his life, both professionally and personally. He was caring, respectful, and generous to everyone he encountered. The people around him felt seen and appreciated, and I never heard anyone speak poorly of him.

Ken is about the same age as my father. As I came to know him and his family, I found myself feeling protective of him and wanting to take the best possible care of him. In return, I witnessed firsthand how thoughtful and considerate he was toward others. One example that has always stayed with me was when an old friend in Australia was celebrating a milestone birthday. Ken carefully assembled a case of wine with vintages corresponding to his friend's age and arranged to have it delivered. I was always struck by the thoughtful details, personal touches, and genuine care he put into his relationships with friends, family, and colleagues. It mattered deeply to him that no one felt overlooked or forgotten.

Ken is also an avid sports fan with season tickets to several Los Angeles teams. Every season, he generously shares those tickets with people throughout his life—including me, his adult son's former Little League coach, people who work on his home, family members, friends, and coworkers who support either the home team or the visiting team. He is always looking for ways to make others feel appreciated and is generous with what he has.

When it comes to his clients and employees, Ken has always felt a profound sense of responsibility for their well-being. During periods of poor market performance, he took those challenges very seriously. He accepted responsibility and never pointed fingers or shifted blame. About six years ago, our parent company at the time proposed a transaction that Ken and other senior leaders believed would be harmful to our business, our clients, and our employees. He led the effort to oppose it, calling an emergency board meeting and traveling to Florida to present their concerns. Ultimately, the transaction did not move forward. Our employees were so grateful that we organized a company-wide card expressing our appreciation. His decision to take that stand carried potential personal and professional consequences, yet he acted because he believed it was the right thing to do. Throughout the

years I worked with him, he repeatedly demonstrated integrity, courage, and a willingness to put others before himself.

My hope is that this letter conveys the character of the man I have known for the past nine years. I understand that Ken has pleaded guilty to an offense, and I do not minimize the seriousness of these proceedings. At the same time, his conduct in this matter is wholly inconsistent with the person I came to know. As an executive assistant, you often see the unfiltered version of someone—the stressful moments, the difficult days, and the interactions that few others witness. In all my years working beside Ken, I never saw or heard anything that suggested he was anything other than a humble and compassionate leader, an honest and hardworking businessman, a devoted family man, and a thoughtful, generous friend.

It was truly an honor to work alongside him for the past nine years. I respectfully ask that you consider my firsthand observations of Ken's character as you determine an appropriate sentence. Thank you for your time and consideration.

Respectfully,

Nichole Salmon
nsalmon@westernasset.com
626-844-9612

# Exhibit 194

**July 20, 2026**

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street New York, NY 10007-1312

Dear Judge Woods,

My name is Gloria Sanchez. I served as the Payroll Manager and Administrator for the Western Asset Deferred Compensation Plans for approximately thirty years, and I am a former colleague of Ken Leech. I worked for Western Asset Management Company in the Pasadena, California office, and I currently reside in Hacienda Heights, California.

I am writing because I have been following Mr. Leech's case and understand that he has pleaded guilty to the offense before the Court. I wanted to share my perspective on the person I knew for approximately thirty years, someone consistently fair, good-natured, and genuinely concerned for the well-being of others.

Throughout my tenure at Western Asset Management Company, I interacted with Ken frequently. He was always thoughtful and deeply committed to both employees and the organization. Ken is a family-oriented person, and he extended that warmth to those around him. He regularly asked about my children and how they were doing, and how much they had grown, and he did the same with many employees. At company family events, Ken and his wife made a point to greet employees and their families, offering sincere appreciation for everyone's hard work.

One gesture that always stood out to me was Ken's annual Christmas card. Every year, he sent a card featuring a photo of his beautiful family. I appreciated these cards greatly and added them to my Christmas tree each season. It was a small but meaningful reflection of the kind of person he is, thoughtful, warm, and genuinely connected to the people he worked with.

Ken was also a proud member of our Leadership Team, and he carried that responsibility with integrity. He consistently approached decisions with the employee experience in mind, which is a rare and valuable quality in corporate leadership.

A particularly memorable example occurred during a period when many positions were being considered for outsourcing overseas. Ken and several members of our leadership team strongly advocated for keeping those jobs in Pasadena. They traveled to our parent company to present detailed reasoning and analytics demonstrating the value of maintaining those roles locally. Their efforts reflected Ken's commitment to the employees whose livelihoods were at stake and his belief in preserving the culture and stability of our workplace.

In my experience, Ken Leech is a person who leads with empathy, fairness, and respect. I hope this perspective is helpful as you consider the full measure of his character.

Honorable Judge Woods, I am hopeful that my letter will provide you with some insight on who Ken Leech really is.

Thank you for your time and consideration.

Respectfully,

Gloria M. Sanchez
[redacted]

# Exhibit 195

August 15, 2026

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods:

My name is Davis Smith, and I am writing to you on behalf of Ken Leech, for whom I worked for almost twenty-five years. I currently live in Manhattan, and I am a retired institutional fixed income and equities analyst. Working alongside Ken for a quarter of a century was, without question, the ultimate achievement of my professional life.

I understand that Ken has pleaded guilty to obstructing a proceeding before the Securities and Exchange Commission. I am not writing to comment on that proceeding or to suggest any view of what his sentence should be. I write only to give you a fuller picture of the man I came to know over so many years, in the hope that it is of some use to you as you consider his sentencing.

In all my years working with Ken, I found him to be humble, kind, and genuinely open to differing opinions — qualities that are rare in our business, and rarer still in someone with his record of success. I had just started at Western and Kenny and had differing opinions about Eastman Kodak. I was very concerned that the company was potential bankruptcy. We argued consistently about the position, sometimes heatedly. The thing about those conversations was that as much as he disagreed with me- he always listened to my opinion and respected what I was saying. That is not a normal behavior for a man in his position. He was gracious, concerned about me and repeatedly expressed concern about how I was personally feeling.

Based on everything I observed and experienced across twenty-five years working closely with him, the conduct at issue in this case is inconsistent with the man I know. Ken led with integrity in his dealings with me and, as far as I ever saw, with everyone around him.

I respectfully ask that you take this letter, and my twenty-five years of firsthand experience with Ken, into consideration, and that you show him leniency in sentencing.

Respectfully,

Davis Smith

[redacted]
New York, New York [redacted]
[redacted]

# Exhibit 196

September 12, 2026

The Honorable Gregory H. Woods

United States District Judge

Southern District of New York

Daniel Patrick Moynihan U.S. Courthouse

500 Pearl Street

New York, New York 10007-1312

Dear Judge Woods,

I began working at Western Asset in November of 2001. Ken Leech was the CIO at Western Asset when I joined. I was and am often in front of clients and prospects articulating the fixed income investment outlook and portfolio positioning of our strategies. My roles and geography have evolved throughout the years. I spent time in Pasadena (5 years), Melbourne (Australia, 2.5 years), New York (17 years) and more recently, back in Pasadena. For the bulk of the last 17 years, my role has been focused on growing the fixed income business within US Wealth, with a particular attention to the gatekeeper/research/asset allocators at the "Home Office".

Throughout my time at Western Asset, Ken was laser focused on delivering for our clients. On countless occasions I witnessed Ken's humble nature with clients. He would accentuate in meetings what he could have done better rather than focus on the investment decisions that he "got right." He shunned the spotlight even though he deserved the positive adoration. Team first was embedded in the DNA of our franchise and no one was more apt to give praise to his colleagues for successful investment decisions then Ken. Conversely, he was the first to shoulder the blame if a position, call or decision detracted from a client portfolio.

The Core and Core Plus strategies were the flagship offering of our fixed income capabilities. Ken was at the helm of the Broad Market team managing Core and Core Plus or the better part of 30+ years. I cannot recall any interaction with Ken whereby I felt that he was disadvantaging the lead strategy of the Firm to benefit from a bespoke, unconstrained, alternative offering. Ken cared deeply for our clients and the outcome in every single portfolio.

On a personal front, when I was confronted with [redacted] the senior leadership of the Firm, including Ken were quick to rally behind me. They allowed me to focus on my health and well-being while still staying plugged in at work because that was the best way for me to [redacted] Throughout my treatment and recovery, Ken was consistently checking in, asking how I was doing and allowing me to balance the work with my treatment.

My ask to the court is for leniency in the sentencing process. Whatever may have transpired during his interview with the government/regulators was an anomaly relative to the character that I witnessed on a consistent basis over 23 years of working with Ken.

Respectfully,

Mike Van Raaphorst

# Exhibit 197

September 11, 2026

**The Honorable Gregory H. Woods**
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

Dear Judge Woods,

My name is Ryan Vaughn. I am 43 years old and have lived in California for the past 18 years. I am writing this letter with the understanding that Ken has pleaded guilty to an offense. My hope is that this letter provides some insight into his exceptional character.

I moved to the West Coast from Florida in 2008 and took a job in sales and trading with the man who introduced me to Ken Leech. My late boss, mentor, and friend, Dale Rodberg, had worked with Ken, covered him as a client, and was also a genuine friend. Over the years, Dale often spoke about their time together and about the kind of man Ken is. He would tell me how devoted Ken is to his family, how humble he is, and how much he enjoys sports, golf, chess, bridge, and trading. He also spoke about Ken's generosity toward charities, friends, and colleagues alike.

Dale truly cherished his time with Ken, whether it was on the golf course, in the office, or while traveling. The respect Dale had for Ken was unrivaled, and he made sure I knew it. All of that resonated deeply with me.

As a young man in the business, I had only heard stories about Ken being one of the smartest traders in the world, navigating fast markets and difficult trades. I hadn't met him yet, but whenever Ken called to place a trade, I became extremely nervous, thinking, "Don't mess it up." Dale would look at me and say the very same thing. When I did stumble, Ken was always patient with me, telling me to "slow it down" or simply correcting me. I appreciated that because it helped me become a better trader. The fact that someone like Ken took the time to help a young, impressionable kid like me meant the world to me.

Ken was always honest and fair, with a great sense of humor to match. When I met him for the first time, I addressed him as "Mr. Leech." He promptly shook my hand, smiled, and said, "Call me Ken." That simple gesture immediately put me at ease. Meeting someone of Ken's stature was intimidating, but his humility made all the difference.

Having the privilege of being on the other end of the phone with Ken for nearly 17 years has truly been an honor. Over time, I also had the pleasure of meeting his wonderful wife, daughter, and son, along with many of his longtime friends. Those experiences only reinforced everything Dale had told me about Ken and his character.

They all have two things in common: they are wonderful people, and they love Ken.

I will always be grateful to Dale for introducing me to such a remarkable man.  I respectfully ask that you exercise leniency in sentencing Ken.

Respectfully,

Ryan Vaughn

# Exhibit 198

The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007-1312

July 7th, 2026

Dear Judge Woods,

I am writing to you to provide my sincere and honest opinion on the character and integrity of Ken Leech.

I have known Mr Leech since 1996 when we both worked at Western Asset Management ("The Firm"). During the years 1996 to 2008, I worked closely with Mr Leech on a number of projects as I was heading up international investments and managing global fixed income portfolios in Western Asset Management's London office. Among other projects, Mr Leech and I collaborated on the integration of the Lehman Brothers Global Asset Management investment team into the Firm after it was acquired by Western Asset Management in early 1996. After 2008 when my role evolved away from investments to international business management, sales and client relations and product development, I continued to maintain contact with Mr Leech albeit on a less frequent basis until 2024.

Over the years I held several conversations with Mr Leech on investment markets, politics and emerging markets. We also met and travelled on business trips together in the US as well as in the UK and in Europe. Over these meetings I developed a strong respect for Mr Leech's exceptional intellectual acumen, his ability to articulate a clear and logical investment philosophy and a disciplined approach to portfolio and risk management. In my experience, Mr Leech was always consistent in his approach to markets and investment strategy and he often documented this in his many thought pieces published on the Firm's website and in client events at which he spoke.

Whenever I interacted with Mr Leech during his time before and after becoming Chief Investment Officer, he demonstrated the highest levels of personal integrity and respect for his role as a fiduciary of the Firm's clients. Mr Leech also displayed exceptional modesty in success and sincere humility and accountability when clients' portfolio performance was challenged. Mr Leech managed his direct and indirect reports as well as his relationships with executive committee peers with the utmost respect and professionalism, recognising and respecting the lines of demarcation between different departments in the Firm. On a personal level, I found Mr Leech accessible and friendly and always willing to listen and consider my and others' views and opinions.

Yours Sincerely,

Michael B. Zelouf, CFA

London, United Kingdom